### THOMAS et al. v. LEY et al.

No. 25465. Jan. 14, 1936.

Rehearing Denied May 26, 1936.

M. M. Thomas, Claude Nowlin, John T.

Gibson, V. E. Stinchcomb, Clarence Mills, Hoyt & Stephens, and Miley, Hoffman, Williams, France & Johnson, for plaintiffs in error.

William J. Collins, John F. Sharp, Jr., and W. R. Withington, for defendants in error.

RILEY, J. This is an action in equity commenced by defendants in error to quiet title to their mineral rights as royalty owners of interests in lots 9, 10, and 11, in block 4, Reno addition, city of Oklahoma, county and state of Oklahoma, upon which a producing oil well is located.

The defendants below, plaintiffs in error, in the main, owners of mineral rights in and under lots 7 and 8 of the same block, claim right to participate in the royalty produced by the well so located and producing, by virtue of community oil and gas leases and other recorded instruments covering the adjoining lots in question. The judgment was in favor of plaintiffs below. It barred defendants, owners of mineral rights in lots 7 and 8, from asserting any title or interest to rents and royalties accruing from the production of oil and gas or other mineral upon lots 9, 10, and 11. It is to reverse this judgment that defendants appeal.

Lots 9, 10, and 11 originally were owned by Willis Jones. On May 3, 1930, long before plaintiffs below acquired any title to said property, Willis Jones executed a community oil and gas lease covering said lots to A. B. McDonald, lessee. This instrument provided an option under which other owners or claimants of an interest in land of the described block 4 might join as lessors. The provision reads:

"This community oil and gas lease made and entered into this 3rd day of May, 1930, by and between Willis Jones, single owner of lots nine (9) and ten (10) and eleven (11) in block four (4) together with such others as may own or claim an interest in and to any part of the land included in block four (4) of Reno addition to the city of Oklahoma City, Okla., and the names of such owners and their spouses may be inserted as parties to this agreement, and this agreement may be hereinafter executed by such person, or persons as parties lessor, with the same effect as if executed by such persons at this time, and all be considered and called lessors, whether one or more and A. B. McDonald, hereinafter called lessee."

Another provision of the lease burdened lots 9, 10, and 11 with a restriction for unit production under which subsequent purchasers would acquire an interest in the royalty on the whole acreage, prorated as to the fraction thereof purchased, bore to the entire tract. These were the words used:

"Although the leased premises are now owned by lessors in severalty or in separate tracts and if any such tract or tracts shall hereafter be further divided and be owned in severalty or separate parcels, the entire premises, nevertheless, shall be developed and operated as one lease and all royalties and rentals accruing hereunder shall be treated as an entirety and shall be divided among and paid to each separate owner or owners in the proportion that the acreage owned by each separate owner or owners bears to the entire acreage."

The variable extent of the entire tract of land to be developed under the terms and conditions of the lease was contemplated by the following clause, and therein a manner and means of exercising the option provided for other owners of real property located in block 4 was stated:

"It is understood and agreed that this lease has been prepared in triplicate and that the signature of any of the owners of any of the lots or parts of lots in block four (4) of Reno avenue addition to Oklahoma City, Okla., on any one of the said leases, shall be binding upon all of the persons executing this lease, the said three triplicate leases being considered and construed as one lease and each of the persons joining in this lease agree that other owners of lands in said block four (4) Reno avenue addition to Oklahoma City, Okla., may join in this lease or on one of the said duplicate leases, and the said signatures thereon and execution thereof shall be construed as though all such persons had signed one instrument, it being understood that all persons who are the owners of property in said block four (4) Reno avenue addition to Oklahoma City, Okla., shall have the same rights and share in the royalties reserved as hereinabove set forth when they shall have joined and executed the same copy at the same time."

This lease contract was properly recorded May 10, 1930. On May 9, 1930, McDonald assigned the said lease to W. B. Weston. The assignment was recorded the following day and Weston immediately, by written contract recorded, assigned the instrument to Capitol Production Trust No. 1. This contract described lots 7 and 8, and Weston therein contracted "to deliver to said party of the second part oil and gas mining lease or leases upon the land last described, in the event same are obtained by him, at actual cost of said lease."

Capitol Production Trust No. 1, developed the property and its well reached the oil sand July 13, 1931, after a shut-in period of time, and on about September 1st, a valuable producing oil well was proved.

Clara Wolf owned lots 7 and 8, but her title was involved in a pending lawsuit whereby she sought to quiet her title. Edwards and Robinson, lawyers, represented her. The trustees of Capitol Production Trust No. 1 desired and required a lease of lots 7 and 8 in order to have a sufficient area upon which to drill the well, but they sought to avoid a questionable title because of the detriment to the sale value of property. At the time the Willis Jones lease to lots 9, 10, and 11 was executed, Edwards and Robinson were present. They had acquired a surface lease on lots 7 and 8, title thereto being in the name of Mildred Fine, and they assigned the surface lease so as to give the trust a sufficient area for a drilling project.

Thereafter and before production the suit of Clara Wolf to quiet her title to lots 7 and 8 was settled and on July 6, 1931, a community oil and gas lease (in substance identical in form with the Willis Jones lease heretofore described) was executed by Clara Wolf and husband in favor of A. B. McDonald, and it was recorded July 29, 1931. Assignment of this lease was made to Weston, and he in turn assigned to Capitol Production Trust No. 1.

Clara Wolf executed certain mineral deeds to lots 7 and 8, and these interests by mesne conveyance were acquired by defendants below, plaintiffs in error.

Willis Jones executed separate mineral deeds to interests in lots 9, 10, and 11 to H. A. Pease, Federal National Bank, Albert Beck, and Opal R. Pease, and several of the defendants in error by mesne conveyances acquired fractional interests.

The first of these were recorded June 20, 1931. The next on June 24, 1931, and the last on September 9, 1932. So it will be seen that all the mineral deeds of plaintiffs below were subsequent to the Willis Jones lease, both in execution and recordation.

On June 24, 1930, Bolten, Sherman & Bollen, Inc., and the C. C. Drilling Company entered into a written contract recorded July 3, 1930, for drilling the particular well wherein it was recited that the Capitol Production Trust has an existing oil and gas lease or leases on lots 7, 8, 9, 10, and 11, in block 4. At that time none of plain-tiffs had acquired any interest in the mineral rights.

There was a written extension of this drilling contract, recorded June 21, 1930. Therein all five lots were described and considered as embraced within the community lease.

There were numerous other recorded instruments of like purport and effect.

On July 6, 1931, Clara Wolf and husband entered into an agreement with the Capitol Production Trust No. 1, declaring lots 7 and 8 to be communitized with lots 9, 10, and 11. This contract was not recorded.

Thus plaintiffs in error contend:

"Under the oil and gas leases, the assignments thereof and other contracts here involved, the plaintiffs in error as owners of the mineral or oil and gas royalty rights in and to said lots 7 and 8 were entitled to share ratably with the defendants in error as the owners of the mineral or oil and gas royalty interest in and to lots 9, 10, and 11, in any production that might be obtained from any of the five lots."

There is merit in this contention. Undoubtedly the lease contract executed by Willis Jones contemplated a communitized lease under the terms of which the owners of lots 7 and 8 might within a reasonable time join and participate in the royalty pro rata.

The fact that the owners of lots 7 and 8 did not sign the particular lease executed by Willis Jones is not material, for an identical instrument in form and purpose was executed by them, and to a mathematical certainty things that are equal to the same thing are equal to each other.

The fact that Edwards and Robinson procured a surface lease on lots 7 and 8, and assigned it for the consideration of a valuable overriding royalty prior to the consolidation of lots 7 and 8 in the community lease is of consequence in this equitable action, for the reason that such consideration by the terms of assignment was intended to flow from the seven-eighths working interest, consequently no detriment was suffered by defendants in error. Moreover, when lots 7 and 8 were joined in the community lease, undoubtedly the terms of the lease provided a right to use so much of the surface as was necessary to maintain operations. The leasing and assignment of the surface rights to lots 7 and 8 was consistent with intention to join the mineral interests of lots 7 and 8 with those of lots 9, 10, and 11 as soon as title to the former was cleared.

Undoubtedly an offset well located on lots 7 and 8 would be a disservice to the interest of lots 9, 10, and 11, and under the circumstances, if no additional land could be joined so as to allow a sufficient acreage for operation, a drainage of oil from lots 7 and 8 would be unjust and inequitable.

In the decision of Gypsy Oil Co. v. Schonwald, 107 Okla. 253, 231 P. 864, this court considered a clause contained in an oil and gas lease providing for development and operation of the leased premises as a unit, with royalties to be paid in the proportion that the acreage owned bore to the whole acreage leased. It was held that the owner of the fee had a right to burden his premises with such a covenant and that a subsequent purchaser was bound by recorded title to the restriction provided. Particularly appropriate to the case at bar is the expression made in the cited case:

"* * * The provisions of the contract between the owner of the entire estate, and the producer, which purposes forestalling inequitable conditions which would otherwise arise between such subsequent purchasers of fractional interest should be sustained on principle. Certainly as to the individual, interests in such properties purchased subject to the lease, developed as a unit, cannot be foreign to any wholesome provision of the law. When such conditions arise, certainty should warrant a disregard of strained objection, when persons acquire interests charged with knowledge of such provisions."

Thus we are presented with the facts that Willis Jones and Clara Wolf, respective original owners of the adjacent lots, included their properties in joint leases whereby they were to share ratably in royalties arising from production upon the consolidated tracts of land. Clara Wolf surrendered the surface lease of her lots for the common purpose, terminated the litigation affecting her title, delivered a lease on her lots to the lessee, who accepted the same in pursuance of a previous agreement. And this was done within a reasonable time. Our conclusion is that the assigns of Clara Wolf are entitled to share ratably in the royalty as by the lease contracts provided.

In so far as ascertainable from the record, these lease contracts were fairly made, and as originally intended by the owners, and without unreasonable delay. Subsequent owners had such notice as should have put them upon inquiry as to the interest claimed, or as to the state of dealing by adjacent owners of lots 7 and 8 in reference to joining the community lease. No pretense is made by defendants in error that they or any of them made inquiry at the time they purchased concerning the progress of consolidation of lots 7 and 8 under the community lease.

Judgment reversed, with directions to enter judgment in favor of plaintiffs in error permitting them to share in the royalties from the oil and gas produced from the well on these premises.

McNEILL, C. J., and BAYLESS, WELCH, and GIBSON, JJ., concur. OSBORN, V. C. J., and BUSBY and CORN, JJ., dissent. PHELPS, J., not participating.