No. 33,217

S. C. WILLEY, as County Treasurer of Greenwood County, and THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF GREENWOOD, *Appellees*, v. THE NATIONAL BANK OF TOPEKA, *Appellant*, THE EUREKA BANK, and CHARLES W. JOHNSON, Receiver of the Eureka Bank, *Defendants*.

(66 P. 2d 610)

Opinion filed April 10, 1937.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery, M. F. Cosgrove, James E. Smith, E. H. Hatcher* and *Frank H. McFarland,* all of Topeka, for the appellant.

*John L. Hunt, Margaret McGurnaghan, John H. Hunt* and *George M. Brewster,* all of Topeka, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: This was an action to recover the value of certain bonds deposited with the defendant bank under the depository statute G. S. 1935, 9-142.

Greenwood county had designated the Eureka bank as a depository for the county funds. The Eureka bank had deposited with the defendant bank, the National Bank of Topeka, bonds as

security for the funds of Greenwood county deposited in the Eureka bank. The bonds in controversy are a part of the bonds so deposited, and their value is admitted to be $10,600, with accrued interest. The Eureka bank became insolvent and was taken over by the state bank commissioner on August 8, 1933. At that time Greenwood county had on deposit with the Eureka bank an amount of money in excess of the security deposited with the defendant bank to secure such deposit in a sum in excess of the amount sued on.

When the bonds in question were received by the National Bank of Topeka, that bank issued its joint custody receipts—one for the Eureka bank and one for the treasurer of Greenwood county. After the failure of the Eureka bank, and on August 19, 1935, the board of county commissioners and the county treasurer of Greenwood county made a demand upon the defendant bank for such securities, and the defendant bank refused to deliver the same, giving for its reason the fact that it had already delivered the bonds to Edwin S. Tucker, vice-president of the Eureka bank, and that it did not have such bonds in its possession and therefore could not deliver them.

Defendant in its answer alleges: that at the time of the issuance of the joint custody receipts it was understood and agreed that the bonds deposited and evidenced by such receipts should be delivered upon the presentation of the duplicate receipts. It alleges that on January 15, 1932, before any bonds were deposited, John E. Kirk, as vice-president and duly authorized agent of defendant bank, wrote to the county attorney of Greenwood county and made an offer to act as joint depository for the bonds deposited to secure the deposit of money of Greenwood county in the Eureka bank, and enclosed a sample of the joint receipt to be used. That eleven days later said offer was accepted by depositing in defendant bank certain bonds, and that defendant bank issued its duplicate receipt— one to the Eureka bank and one to Greenwood county. The receipt contained the following statement:

"This receipt must be surrendered when the securities are withdrawn. The responsibility of the bank for the securities is limited to the faithful observance of due care and diligence."

The defendant bank then alleges a number of deposits of securities for which like duplicate custody receipts were issued; that various withdrawals were made thereunder; that these transactions ran

from January 26, 1932, to August 7, 1933. That on the last-named date, under the terms of the alleged contract so made, "E. S. Tucker, vice-president and duly authorized agent of the Eureka bank, presented to the defendant the duplicate receipts which had been issued on July 10, 1933, and pursuant to the terms of said contract the bonds described in said receipt were delivered to E. S. Tucker." That by this action the defendant bank had duly performed all the conditions of the contract required by the defendant to be performed.

For a further and separate defense defendant bank alleged that these bonds were received, receipts were issued in duplicate and bonds were surrendered and withdrawn in the same manner as similar transactions were handled with a large number of other banks and municipalities; that by reason thereof a custom had been established as to the method of handling the bonds in controversy identical with the custom in handling similar transactions.

Another defense was pleaded by defendant bank as follows:

"For a further and separate defense, the defendant alleges that the plaintiff should not be admitted to say that the removal and delivery of said bonds to Edwin S. Tucker, if made, was made without authority and unlawfully, for the reason that the plaintiffs did, on the 8th day of August, 1933, approve the action of Edwin S. Tucker in the following manner, to wit:

"On the morning of August 8, 1933, Edwin S. Tucker submitted to S. C. Willey, county treasurer of Greenwood county, Kansas, additional security to take the place of that covered by the receipt attached to plaintiff's amended petition as exhibit 'A.' Said county treasurer, with full knowledge of the transaction and the delivery of the bonds to Edwin S. Tucker, accepted said security in lieu of the securities withdrawn on August 7, 1933, and the entire transaction was approved by him. Said security consisted of bonds in an amount of at least $10,000, the exact amount and a more definite description being unknown to this defendant. That the acts of the defendant, as hereinabove set forth, were in accordance with the custom in the prior transactions with plaintiff and in accordance with the general banking customs in handling matters of this kind."

The reply of plaintiff denied the facts alleged in defendant's answer, upon which the last defense is based. Issue being joined on the pleadings, a trial by jury was waived and the case was tried to the court. The court made findings of fact and conclusions of law. To the findings of fact and conclusions of law defendant filed certain exceptions, which were overruled. Defendant also requested certain special findings which were by the court refused.

Ten separate assignments of error are presented. These assign-

ments may be resolved into two broad questions presented in the brief of appellant. It is there stated that:

"It will serve no useful purpose to discuss separately the court's conclusions of law, as they all center around two concrete propositions, as follows:

"1. When the National Bank of Topeka delivered to Edwin S. Tucker, vice-president of the Eureka bank, the $10,600 in bonds on his presentation of both of the joint custody receipts issued for the Eureka bank and the county treasurer, in accordance with the understanding of the parties as to what would evidence joint consent, it performed all the duties imposed upon it by statute and all the duties imposed upon it by agreement and understanding for safe-keeping of the bonds between the National Bank of Topeka, the Eureka bank and S. C. Willey, the county treasurer.

"2. When S. C. Willey received certain bonds in the face amount of $11,000 with knowledge that the $10,600 of bonds had been withdrawn by Edwin S. Tucker, he ratified the action of Edwin S. Tucker in withdrawing the bonds and relieved the parties from further liability under the original deposit."

For a proper understanding of the first proposition it is necessary to consider the language of the statute. That part of the statute G. S. 1935, 9-142, material here reads as follows:

"No banks, bankers or bank officers shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security, except that bonds of the United States, of the state of Kansas, or of some county, school district or municipality of the state of Kansas, or other securities, may be deposited with the state treasurer as security for the deposit of state money, with the trustees of postal savings bank funds, and with any county treasurer, any city treasurer, the treasurer or other fiscal officer responsible for public funds, of any township, board of education, school district, or other municipal body, for the security of such funds and with the receiver of any insolvent bank for the security of funds of the insolvent bank: *Provided,* That such treasurer or other fiscal officer shall be responsible under his bond for the safekeeping of such bonds; and such bonds (except such as are deposited with the state treasurer or the trustee of postal savings bank funds) shall be forthwith deposited in a burglar-proof vault of a responsible safe-deposit company or bank equipped with adequate modern facilities for the safekeeping of securities, located within the state of Kansas, under contract with such safe-deposit company or bank that such bonds may be withdrawn or coupons detached only by the joint consent of the owner thereof, and the treasurer or other fiscal officer representing the public body to which such bonds are pledged; but no bonds belonging to a depository bank shall be deposited for safekeeping in any safe-deposit vault owned or controlled by such depository."

Under the first proposition it is urged the defendant bank, under the statute, had a right to make an agreement as to what shall evidence joint consent, and when joint consent was evidenced in the manner agreed upon by the parties, it was acquitted of further liability. Appellant points to the language of the statute which

permits the county official to deposit the bonds with the pledgee bank under contract that the bonds may be withdrawn only by the joint consent of the pledgor bank and the county official, contending that the statute does not pretend to dictate the terms of the contract and that the delivery of the bonds could be regulated by the agreement of the parties, and that the delivery in this case was in accordance with the contract made by the parties.

These contentions require an examination of certain findings of fact by the trial court. In a consideration of these findings it will be helpful to remember that the Eureka bank, from January 27, 1932, deposited with defendant bank two types of securities—warrants and bonds. The warrants are designated by the receipts Nos. 282 and 309, while the bonds carried the receipts Nos. 524, 599 and 655. The bonds in controversy were covered by receipt No. 599.

The findings of fact necessary to consider are:

"5. That from and after January 27, 1932, certain securities were deposited by the Eureka bank with the National Bank of Topeka to secure county deposits made with it; that these deposits were made under the provisions of the statutes of this state with reference thereto; that the National Bank of Topeka has, from time to time, as such deposits were made, issued its joint receipts in duplicate acknowledging the same, as it more fully hereinafter sets forth.

"6. That the arrangements for the deposit of bonds by the Eureka bank with the National Bank of Topeka were made by Edwin Tucker, vice-president of the Eureka bank; that at the time the first deposit was made Edwin Tucker had a conversation with the trust officer of the National Bank of Topeka, J. E. Kirk, by which it was arranged that the securities should be held by the National Bank of Topeka, that joint custody receipts should be isued therefor, one for the Eureka bank and one for the county treasurer of Greenwood county, Kansas; and that the securities could only be withdrawn upon the presentation of both receipts. That S. C. Willey, as county treasurer of Greenwood county, Kansas, made no arrangements personally with the National Bank of Topeka, with reference to the depositing and holding of such securities.

"That pursuant to a conversation between Edwin Tucker and J. E. Kirk, as above referred to, J. E. Kirk wrote the following letter, dated January 15, 1932, which was introduced in evidence as defendant's exhibit 6:

JANUARY 15, 1932.

"*Mr. I. F. Benest, County Attorney, Eureka, Kansas.*

"Dear Mr. Benest: We are acting as joint depository for city, school district and county obligations deposited to secure deposits of funds over the state belonging to those political subdivisions. We find that Kansas school warrants are quite acceptable in the class of securities deposited for this purpose, as are also Kansas municipal bonds.

"For your information we are sending you a sample of our joint receipt, one of which we issue to the municipality or political subdivision, and the other to the bank, and securities cannot be withdrawn without both receipts being presented.

"I have frequent visits with our mutual friend, John A. Davis.

Respectfully yours,

JEK-WS
*Vice-president and Trust Officer.*

"7. That on January 27, 1932, there was deposited by the Eureka bank in the National Bank of Topeka, to secure deposits made by Greenwood county in the Eureka bank, certain warrants in the amount of $25,846.40, for which the National Bank of Topeka issued its receipt in duplicate, numbered 282, introduced in evidence in this case as 'plaintiff's exhibit A-1.'

. . .   .   .   .   .   .   .   .   .   .   .   .   .

"Both copies of said receipt were delivered to Edwin Tucker who, on his return to Eureka, Kan., delivered one copy of said receipt to S. C. Willey, county treasurer of Greenwood county.

"Subsequently, and on February 25, 1932, Edwin Tucker, theretofore having received the copy of the receipt held by the county treasurer, came to Topeka, presented both of said copies to the National Bank of Topeka, and was permitted to withdraw the securities therein listed.

"8. That thereafter, and on February 25, 1932, there was deposited in the National Bank of Topeka by Edwin Tucker, its vice-president, for and on behalf of the Eureka bank, certain securities in the amount of $25,500 to secure deposits of Greenwood county with the Eureka bank; that to evidence such deposit the National Bank of Topeka issued its joint receipt No. 309, introduced in evidence as defendant's exhibit 6. . . . .

"Both copies of this receipt were delivered to Edwin Tucker, who delivered one copy thereof to S. C. Willey, county treasurer of Greenwood county, Kansas. Neither copy of this receipt has ever been presented to the National Bank of Topeka, although neither the Eureka bank nor S. C. Willey, as county treasurer, have their copy of this receipt. The securities covered by this receipt are still in the possession of the National Bank of Topeka.

"9. That the securities evidenced by receipts Nos. 282 and 309 were not such securities as the statutes of the state of Kansas contemplate should be received as security for county deposits.

"10. That the endorsement upon receipts Nos. 282 and 309 of the permission to substitute United States government bonds, municipal bonds or other Kansas school warrants, was made pursuant to an agreement between the board of county commissioners of Greenwood county, Kansas, the treasurer of said county, and the Eureka bank; which agreement was made prior to the time of the deposit of such securities. That the Eureka bank subsequently exercised its right of substitution of the securities deposited under receipt No. 282.

"11. That the third deposit of securities with the National Bank of Topeka by the Eureka bank under its agreement with the county was made by Edwin Tucker, its vice-president, on April 12, 1933, in the total amount of $27,000, for which the National Bank of Topeka issued its joint custody receipt No. 524 in duplicate, which receipt was introduced in evidence as plaintiff's exhibit 2;

one copy of which receipt was delivered to S. C. Willey, county treasurer of Greenwood county, Kansas, and one copy was retained by the Eureka bank.

"A copy of said joint custody receipt No. 524, introduced in evidence as plaintiff's exhibit 2.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"12. That on August 7, 1933, a conference was had between Edwin Tucker, vice-president of the Eureka bank, and S. C. Willey, county treasurer of Greenwood county, Kansas, at which it was determined that the Eureka bank had on deposit securities in excess of the amount necessary to secure the deposit of county funds in said bank, in the amount of at least $5,000; and at the request of Edwin Tucker as an officer of said bank, S. C. Willey, as county treasurer of Greenwood county, Kansas, endorsed on the copy of the receipt No. 524 held by him and the copy of the receipt held by the Eureka bank, an authorization to the National Bank of Topeka to release $5,000 par value of the bonds evidenced by said receipt.

"13. That on or about July 10, 1933, the Eureka bank made another deposit of securities with the National Bank of Topeka to secure the deposit of county funds with the Eureka bank in the amount of $10,600; that these bonds were delivered to the National Bank of Topeka by mail; that upon the receipt of such bonds and securities, the National Bank of Topeka issued its joint depository receipt No. 599, both copies of which were delivered to the Eureka bank by mail.

"A copy of said receipt No. 599, introduced in evidence as defendant's exhibit 3, and a copy of the letter of transmittal accompanying said receipt No. 599, which was introduced in evidence as defendant's exhibit 2.  .  .  .

"14. That at the time of the conference of August 7, 1933, between S. C. Willey, county treasurer of Greenwood county, Kansas, and Edwin Tucker, vice-president of the Eureka bank, nothing was said by either of said parties with reference to the release of any bonds held by the National Bank of Topeka under receipts issued by it, other than the authorization for the release of the $5,000 in bonds endorsed upon receipt No. 524.

"15. It does not appear from the evidence that a copy of receipt No. 599 was ever in the possession of S. C. Willey, county treasurer of Greenwood county, Kansas.

"16. That Edwin Tucker came to Topeka on August 7, 1933, for the purpose of withdrawing $5,000 in bonds which it had been agreed he should withdraw from the bonds deposited under receipt No. 524, bearing date of April 12, 1933. That upon arriving in Topeka he went to a room at the Jayhawk hotel occupied by Ronald Finney, and it was there suggested by Ronald Finney that Edwin Tucker should withdraw from the National Bank of Topeka the $10,600 of bonds deposited under receipt No. 599, for the purpose of depositing those bonds, or the major portion thereof, with Thomas B. Boyd, state treasurer. That at the time such suggestion was made, Edwin Tucker had in his possession both copies of receipt No. 599. The evidence does not show that prior to the time that this suggestion was made by Ronald Finney, that Edwin Tucker had any intention of withdrawing the bonds under receipt No. 599, or any part thereof.

"17. That following his meeting with Ronald Finney at the Jayhawk hotel,

Edwin Tucker went to the National Bank of Topeka and there presented to its trust officer the two copies of receipt No. 524, containing the endorsement for the release of the $5,000 for which he received from the said bank bonds of the city of Norton, Kansas, numbers 30, 31, 32, 45, and 46, of the par value of $5,000, and receipted for the same as is endorsed upon said receipt No. 524, being plaintiff's exhibit 2. That at that time Edwin Tucker also presented to the National Bank of Topeka both copies of receipt No. 599, and received the bonds evidenced by said receipt in the amount of $10,600; for the recovery of which bonds, or the value thereof, this action is now being prosecuted.

"18. That at the time that the National Bank of Topeka delivered to Edwin Tucker the bonds described in receipt No. 599 S. C. Willey, county treasurer of Greenwood county, Kansas, had no knowledge of the fact that said bonds were being withdrawn; nor did he know of Edwin Tucker's conversation with Ronald Finney immediately prior thereto, regarding the withdrawal of said bonds.

"19. That later, and during the afternoon of August 7, 1933, Edwin Tucker returned to the National Bank of Topeka and made a deposit of bonds covering the deposit of funds of Greenwood county in the Eureka bank, in the face value of $23,100, for which the National Bank of Topeka issued and delivered to Edwin Tucker its receipt No. 655 in duplicate, one copy of which was delivered by Edwin Tucker to S. C. Willey, county treasurer of Greenwood county, on the morning of the following day. That included in the bonds covered by receipt No. 655 was $1,100 of bonds theretofore deposited under receipt No. 599, and the balance of the bonds remaining under receipt No. 524, after the $5,000 had been withdrawn. . . .

"20. On the morning of August 8, 1933, S. C. Willey, county treasurer of Greenwood county, Kansas, called the National Bank of Topeka by long-distance telephone for the purpose of determining what bonds were held in safekeeping to secure the county's deposit in the Eureka bank, and after obtaining such information went to see Edwin Tucker at the Eureka bank.

"21. That on August 8, 1933, Edwin Tucker delivered to S. C. Willey, county treasurer of Greenwood county, Kansas, eleven (11) bonds in the aggregate face amount of $11,000, taking his receipt therefor, which was introduced in evidence as defendant's exhibit 1, a copy of which is in words and figures as follows:

THE EUREKA BANK

EUREKA, KANSAS, August 8, 1933.

"Received of the Eureka Bank, Eureka, Kansas, the following bonds:

| | | | | | | |
|---|---|---|---|---|---|---|
| County of Wyandotte Gen. Imp. Bond No. 32464 | | | | | | $1,000.00 |
| " | " | " | " | " | No. 32465 | 1,000.00 |
| " | " | " | " | " | No. 32466 | 1,000.00 |
| " | " | " | " | " | No. 32467 | 1,000.00 |
| " | " | " | " | " | No. 32468 | 1,000.00 |
| " | " | " | " | " | No. 32469 | 1,000.00 |
| County of Norton Int. Imp. Bond No. 30 | | | | | | 1,000.00 |
| " | " | " | " | " | No. 31 | 1,000.00 |
| " | " | " | " | " | No. 32 | 1,000.00 |
| " | " | " | " | " | No. 45 | 1,000.00 |
| " | " | " | " | " | No. 46 | 1,000.00 |

(Sgd.)   S. C. WILLEY, *County Treasurer.*

"(Following the words 'County of Wyandotte' and preceding the words 'Gen. Imp. Bond,' are inserted with pen and ink the words: 'Kansas City, Ks.') (Also in the right-hand margin, and above the signature of S. C. Willey, appear the figures with pen and ink, '11,000.00.')

"That all of the bonds described in the receipt, a copy of which is set forth above, were forgeries, and of no value whatsoever.

. "22. That Edwin Tucker did not, at the time he delivered the bonds mentioned in finding No. XXI, inform S. C. Willey that said bonds were given to take the place of the bonds covered by receipt No. 599; and the said Willey, at the time he received said $11,000 of bonds, did not know that said bonds were forgeries."

### "Conclusions of Law

"1. That under the provisions of section 9-142, R. S. Supp. 1933, the bonds in question could only be withdrawn or coupons detached 'by the joint consent of the owner thereof (the Eureka bank) and the treasurer (S. C. Willey), or other fiscal officer representing the. public body to which such bonds are pledged.

"2. That Edwin Tucker, at the time he withdrew the $10,600 in bonds from the National Bank of Topeka under receipt No. 599, was not the agent of, nor acting for or on behalf of S. C. Willey, county treasurer of Greenwood county, Kansas.

"3. That S. C. Willey, while acting as treasurer of Greenwood county, Kansas, was a public officer whose duties were prescribed by law; and in the absence of any statutory provision authorizing the same, was without authority to make any contract or agreement with the Eureka bank or the National Bank of Topeka, contrary to or waiving the express provisions of the statute prescribing the manner in which county funds were to· be deposited, or bonds securing the same were to be withdrawn.

"4. At the time of the withdrawal of the $10,600 in bonds under receipt No. 599 by Edwin Tucker, S. C. Willey, as treasurer of Greenwood county, Kansas, had not consented to their withdrawal, and there was no 'joint consent' within the meaning of that term as used in section 9-142, R. S. Supp. 1933, and that the delivery of said bonds by the National Bank of Topeka to Edwin Tucker was in violation of the express provisions of such statute.

"5. The mere presentation of both copies of the joint receipt to the depository, in the absence of an express consent to the delivery of the securities represented thereby, was not sufficient, in and of itself alone, to constitute joint consent, within the meaning of the statute.

"6. That the plaintiffs or their successors in office are entitled to recover from the defendant, the National Bank of Topeka, the sum of $————, with interest thereon at the rate of six percent per annum from the ———— day of ————————, 193—.

"7. That the plaintiffs or their successors in office are entitled to recover from the defendants their costs herein, and thereupon the court upon said findings of fact and conclusions of law finds that the· defendants are indebted to the plaintiffs in said cause in the sum of eleven thousand one hundred ninety-two 72/100 dollars; and that plaintiffs are entitled to judgment against said defendant, National Bank of Topeka, for said amount of $11,192.72.

"It is, therefore, considered, ordered, adjudged and decreed by the court that the plaintiffs have and recover of and from the defendant, National Bank of Topeka, the sum of $11,192.72, and that said judgment bear interest at the rate of six percent per annum until paid from said January 25, 1936; and it is further ordered and adjudged that the plaintiffs have and recover of and from the defendant, National Bank of Topeka, their costs herein taxed at $————, for which let execution issue.

"It is further ordered, adjudged and decreed by the court that the defendants, the Eureka bank, a corporation, and Charles W. Johnson, receiver of the Eureka bank, be and they are hereby forever barred and enjoined from setting up any claim of any kind or nature whatsoever to the bonds described in plaintiff's petition and to the proceeds of this judgment."

Holding steadily in view of the language of the statute and the findings of the court as above set out, we proceed to consider the two propositions as outlined by counsel.

We are unable to agree with the first proposition. We think it untenable for several reasons:

The statute provides in express words that the bonds shall be withdrawn "only by the joint consent of the owner thereof, and the treasurer or other fiscal officer representing the public body to which such bonds are pledged."

The trial court found (finding 18) that the treasurer had no knowledge that these bonds were being withdrawn. As there was evidence to support this finding, the same is not now open to re-view. (*Peckham v. Keenan,* 122 Kan. 544, 253 P. 2d 205; *Farney v. Houser,* 109 Kan. 75, 198 Pac. 178.) While this finding is a conclusive answer to the first proposition of counsel, we will note further that on June 21, 1933, the Eureka bank wrote the defendant bank in regard to the bonds in controversy and stated: "Will you kindly issue a joint receipt to the county treasurer of Greenwood county, Kansas, and this bank, sending one copy to the treasurer and one to us."

When, therefore, the defendant bank as shown by the findings forwarded both copies of the joint depository receipt to the Eureka bank by mail, it ignored not only the instructions of the owner of the bonds, but what seems to be the true purpose and object of the statute. It cannot be questioned that defendant was by the statute in a fiduciary relation, both with the Eureka bank and Greenwood county and was under a duty to act for the benefit of both parties. If so, it violated that duty of loyalty when it de-livered both joint receipts to the Eureka bank. Without authority under the statute it agreed to deliver the bonds upon the presen-

tation of both joint receipts. It then delivered both joint receipts to one of the interested parties. Thereafter, without the knowledge of the county official, as we have seen, it took the final step of delivering the bonds to the insolvent bank. The statute required joint consent. How was that consent to be manifested? Certainly the defendant was required to use reasonable prudence in ascertaining that the consent of the county was given before the bonds were withdrawn. Certainly reasonable prudence was not shown under the facts in evidence. Certainly this court will not relax the requirements of care and vigilance imposed by the law on those who in a trust relationship handle the money and property of others. Delivery upon presentation of joint receipts is not necessarily delivery with joint consent.

We are not impressed with the argument that the requirement of joint consent can be whittled away by the provision that the county official may make a contract with pledgee bank. We think the joint consent provision must be read into any contract so made. The purpose of the statute was to protect the county in case the depository bank failed to pay the county the funds on deposit. The trial court held that the mere possession of the joint receipts under the circumstances was not enough to excuse the defendant bank in turning over the bonds. In that view we concur.

It is urged by defendant "that the evidence clearly shows that the delivery of the bonds in question was in accordance with the general custom which had been established in such matters between the defendant bank and S. C. Willey, the county treasurer." The court below not only made no finding as to any custom which would be binding on Greenwood county, but refused to give a requested finding to that effect.

The evidence shows that from January 26, 1932, until August 8, 1933, various deposits of securities were made by the Eureka bank with defendant bank. Some of these deposits were warrants and not acceptable under the statute. These deposits of warrants contained a substitution provision, and could be withdrawn without consent. The business practice of withdrawing warrants from time to time where no joint consent was necessary, could not well be designated as a custom in regard to depository bonds. Warrants are not mentioned in the statute. There were only two instances where bonds were withdrawn, to wit: Withdrawal of $5,000 under receipt No. 524, and this was upon written consent of the county treasurer,

and withdrawal of $10,600 under receipt No. 599, being the bonds in question. These withdrawals were made on the same day. Two withdrawals of bonds on the same day could not be translated into a custom. A mere recital of the facts must refute any claim, of either a general or special custom, that would justify appellant in turning over the bonds without the consent of the county. Besides, we are not ready to concede that a business practice, even assuming it were established by satisfactory proof, could override the terms of a positive statute. The action of the court in refusing the requested finding was clearly justified by the evidence.

We pass to the second proposition—ratification.

It is urged that when the county treasurer received the $11,000 in bonds with the knowledge that the $10,600 in bonds had been withdrawn by Tucker, he ratified the withdrawal.

This contention is based on the assumption that when the treasurer of Greenwood county accepted the forged bonds he had knowledge that the bonds here in controversy had been withdrawn. One answer is that the findings of the trial court, findings 20, 21, and 22, based on the evidence in the case, do not support the assumption. It is not the province of this court to weigh the evidence, and we are concluded by the findings.

There is another answer to the theory of ratification. In defendant's brief it is stated that the evidence clearly showed that there was an arrangement between Tucker, vice-president of the Eureka bank, and the county treasurer of Greenwood county "by which Tucker could withdraw bonds at any time provided he gave S. C. Willey others, and when S. C. Willey accepted bonds in lieu of those withdrawn, he certainly ratified the withdrawal."

The argument seems to run thus: Tucker of the Eureka bank was agent of the county; as such agent he had authority to withdraw the bonds; having withdrawn such bonds and substituted the forged bonds the county ratified the withdrawal and the county is therefore bound by such act.

The answer is that if the act of withdrawal and substitution was authorized, there is no occasion for ratification. Ratification is the affirmance by a person of a prior act which did not bind him, but which was done, or professedly done, on his account whereby such act is given effect as if originally authorized by him. It has no application to situations where the original act was authorized. (Restatement, Agency, Sec. 82.) One may not claim authorization and ratification in the same breath.

We have examined the various assignments of error. The findings of fact by the trial court are supported by the evidence, and the exceptions by defendant were not well taken. As these findings fairly cover the case, there was no error in refusing the special findings as requested. The conclusions of law were justified by the findings. Every proposition advanced by defendant has been considered, and the conclusion has been reached that no error was committed by the trial court.

The judgment is affirmed.

WEDELL, J., not sitting.