Fannie Mae STROUD, Letha A. Gaines, Z. D. Walter Gaines, Warren Gaines, and Matt Gaines, Plaintiffs in Error,

v.

D-X SUNRAY OIL CO., Van-Grisso Oil Co., T. F. Chrystal, Florence S. Petty, W. C. Miller, I. G. Chrystal, T. K. Quillin, Agnes Gaffney, Fred W. Lintz, Rolland M. Sifers, Raymond F. Kelly, Grace Mae Fairfield and E. L. Norton, Defendants in Error.

No. 39533.

Supreme Court of Oklahoma.

Nov. 7, 1962.

Bruce & Rowan, Oklahoma City, for plaintiffs in error.

Smith, Leaming & Swan, Oklahoma City, for Van Grisso Oil Co.

Smith & Smith, Guthrie, for Rolland M. Sifers, John B. Gatchell, Executor of Estate of Agnes Gaffney, deceased, and J. B. Fairfield, successor in interest to Grace Mae Fairfield.

Charles A. Moser, Guthrie, for Juanita Grace Lintz, Executrix of Estate of Fred W. Lintz, deceased.

Savage, Gibson, Benefield & Shelton, Oklahoma City, for James Petty, Executor of Estate of Florence Petty, dec.

T. Keeler Quillin, Oklahoma City, for Ruth C. Miller, Executrix of Estate of William C. Miller, deceased.

Don Emery, G. D. Ashabranner, Ames, Daugherty, Bynum, Black & Rogers, Cochran, Dudley, Fowler, Rucks, Baker & Jopling, Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Lytle, Johnston & Soule, Oklahoma City, amici curiæ.

BERRY, Justice.

The parties who appear here in the same relative position as in the trial court, will be referred to herein as they appeared in said court or by name.

As of February 8, 1927, Maddie Gaines, deceased, owned the NE/4 of Sec. 34, T. 11N, R. 1E, Logan County, Oklahoma. On said date she conveyed an undivided one-half of the minerals underlying the W/2 of the described quarter to T. F. Chrystal (20 acres under SW/4 of NE/4). In this conveyance Mrs. Gaines reserved the executive rights to lease and to take rentals and bonuses under the then-subsisting oil and gas lease and future leases; T. F. Chrystal was granted a non-participating royalty interest only. Mr. Chrystal subsequently assigned a portion of his mineral interest to others. The interest so originally acquired by Mr. Chrystal and those presently owning said interest will be referred to herein as "Chrystal interest".

On March 10, 1927, Maddie Gaines conveyed to Tom Slick, Inc., one-fourth of the minerals underlying the W/2 of NE/4 (10 acres under SW/4 of NE/4). The owners of said interest are not parties to this appeal and in fact make no claim adverse to that asserted by plaintiffs, who are the heirs and successors of Maddie Gaines.

Prior to January 12, 1952, the oil and gas lease covering the land at the time Maddie Gaines conveyed the aforementioned non-participating royalty interest to Mr. Chrystal expired. On said date Maddie Gaines executed and delivered to Van-Grisso Oil Company, hereafter referred to as "Van-Grisso", an oil and gas lease covering the S/2 of NE/4. This lease contained a so-called entirety clause, which read thusly:

"13. If the leased premises shall *hereafter* be *owned* in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may be *hereafter* divided by sale, devise, or otherwise, or to furnish separate measuring or receiving tanks * * *." (Emphasis supplied.)

This lease provided that owners of minerals should receive as royalty ⅛th of the accruals from oil or gas produced and sold.

As of date of execution of the mentioned lease, Maddie Gaines owned and continued to own until her death, all of the minerals under the E/2 of NE/4 and an undivided one-fourth of the minerals under the remainder (W/2 of NE/4) of the quarter, together with the right to lease the Chrystal interest (200 acres under SW/4 of NE/4).

Maddie Gaines' spouse, at the time the mentioned conveyances were made, also executed same.

In January, 1952, those owning or possessing authority to grant oil and gas leases covering the mineral interest so conveyed to Tom Slick, Inc., executed and delivered such leases to Van-Grisso. The only minerals described in said leases were those underlying the SW/4 of NE/4. While no controversy exists as to said leases, we note that it was stated in the entirety clause of same that "If the leased premises are now or shall hereafter be owned in severalty" all royalties accruing shall be treated as an entirety, etc.

Van-Grisso, following execution and delivery of the lease in controversy, obtained a purported ratification of same by Mr.

Chrystal and those to whom he had conveyed an interest in the minerals that he had acquired from Maddie Gaines.

Van-Grisso caused a test well for oil and gas to be drilled on the SE/4 of NE/4 which well was completed as a commercial producer. Subsequently, such a well was drilled on the SW/4 of NE/4, which was also completed as a commercial producer. It appears that D-X Sunray Oil Co. purchased oil produced from the wells.

The well first above mentioned has produced and will produce a greater amount of oil than the well last mentioned. This apparently gave rise to the claim of the Chrystal interest that the entirety clause heretofore quoted and their ratification of the lease served to pool production from the S/2 of NE/4, save production from the SE/4 of NE/4 attributable to the 10-acre mineral interest acquired by Tom Slick, Inc. As a result of said claim, plaintiffs caused the instant action to be filed.

Following trial of case to the court, it was found and held in substance that while plaintiffs, as the heirs of Maddie Gaines, owned all of the minerals under the SE/4 of NE/4, the entirety clause of the lease in controversy which covered the S/2 of said NE/4, together with ratification of the lease by the Chrystal interest, served to pool all royalty production attributable to minerals owned by plaintiffs and those owned by the Chrystal interest. It was found and held that plaintiffs should take 50/80ths of the royalty and the Chrystal interest should take 20/80ths thereof. Since the owners of the mineral interest conveyed to Tom Slick, Inc., would not share in the production from the well on the SE/4 of NE/4, the judgment served to reduce the royalty payable on production from said well to 70/80ths of the stipulated ⅛th royalty. Thusly, the lessee benefited.

From order of the trial court denying plaintiffs' motion for new trial which was directed to the mentioned judgment, plaintiffs perfected this appeal.

■ It is settled law in this jurisdiction that in absence of agreement or circum-

stances showing an intent to pool royalty for benefit of all the owners of land covered by an oil and gas lease, the royalty belongs to the owner in severalty from whose land the oil is produced. See Seal et al. v. Banes et al., 183 Okl. 203, 80 P.2d 657, and Peerless Oil & Gas Co. v. Tipken, 190 Okl. 396, 124 P.2d 418. It is of further significance to note that the last cited case deals with a joint lease and not the leasing of non-participating royalty.

Defendants argue that an intent on the part of Maddie Gaines to pool royalty production attributable to the Chrystal mineral interest and her mineral interest under the S/2 of NE/4 is evidenced by the entirety clause of the lease which covered the referred-to interests. We are unable to agree.

■ Wording of the entirety clause to the effect that "If leased premises shall *hereafter* be *owned* in severalty or in separate tracts" made clear that it did not apply to minerals then owned in severalty but applied only to minerals subsequently severed from the fee by a conveyance by Maddie Gaines or her successor in interest. In Webster's Third New International Dictionary the word "hereafter" is defined in part as "after this; after this in order or sequence".

In Summers Oil and Gas Per. Ed., Vol. 3A, Sec. 609, p. 442 et seq., it is stated that while the majority of courts hold that where a tract of land has been leased for oil and gas and is afterward sold in separate tracts subject to the lease, owners of the separate tracts are entitled to royalties accruing to their tract, some courts hold that in such instances the royalties should be apportioned; that to avoid "litigation that so commonly arises out of situations of this sort, lessees have inserted in many modern leases a provision, commonly referred to as the 'entirety' clause, to the effect that if the lands leased shall subsequently be owned in separate tracts, the lessee may develop the original tract as a unit and royalties shall be apportioned among the owners of the separate tracts in the proportion that their acreage bears to the entire tract cov-

cred by the lease." The matter of whether an entirety clause serves to render inapplicable the rule announced in the cases first herein cited depends upon the wording of the clause as applied to the facts. If the word "now" or a word of similar meaning is used, the clause no doubt applies to minerals held in severalty at the time the lease is executed but not so where the phrase "hereafter be owned" is used as it was in the clause under consideration.

Defendants have not cited a case, nor has our research led us to one, sustaining the proposition that an entirety clause such as the one before us operates to pool royalty production attributable to minerals owned by the lessee with royalty production attributable to non-participating minerals owned by others at the time the lease was executed. As tending to sustain their contention, defendants cite Gypsy Oil Co. v. Schonwald et al., 107 Okl. 253, 231 P. 864; Eason et al. v. Rosamond et al., 173 Okl. 10, 46 P.2d 471; Bascom v. Maxey et al., 195 Okl. 259, 157 P.2d 158; Thomas Gilcrease Foundation v. Stanolind Oil & Gas Co., 153 Tex. 197, 266 S.W.2d 850; and Cockrell et al. v. Texas Gulf Sulphur Co., 157 Tex. 10, 299 S.W.2d 672.

While in the case second above cited (46 P.2d 471) the beginning portion of the entirety clause there under consideration read as the beginning portion of the clause here under consideration, the clause was held applicable to minerals conveyed by lessor *subsequent* to execution of the lease. Therefore, the case is not in point. Defendants stress Gilcrease v. Stanolind Oil and Gas Co., supra. It was stated in the entirety clause of the lease there under consideration that "If the leased premises are *now* or hereafter shall be owned in severalty", a pooling resulted, which language serves to distinguish that case from this. The other cases cited by defendants can also be readily distinguished.

■ Since the entirety clause before us is not so worded as to evidence an intent on the part of Maddie Gaines to pool production from the S/2 of NE/4, (assuming that she had this lawyer) a pooling can only be said to have arisen if the reservation of executive powers by Maddie Gaines in her mineral conveyance to Mr. Chrystal serve to establish the intent of the parties thereto that upon exercise of such power a cross-conveyance of minerals during term of lease under the SE/4 of NE/4 and SW/4 of NE/4 and a pooling of production from the two 40's would result. In holding that a pooling does not result in such instances, the Supreme Court of Texas said in Minchen v. Fields et al., 345 S.W.2d 282, 285, that "We agree with the Court of Civil Appeals that the act of Fields in executing one lease covering the 802.6 acres did not unitize or pool all of the mineral interests in said land. Brown v. Smith, 1943, 141 Tex. 425, 174 S.W.2d 43; Nugent v. Freeman, Tex.Civ.App.1957, 306 S.W.2d 167, wr. ref., n. r. e. As said by the Court of Civil Appeals, 'the reason of the rule is that where mere executive rights are conferred or reserved, there is no intention evidenced to vest authority to convey a royalty interest reserved or the royalty interest attributable to the minerals leased and to hold that such holder can unitize or pool the interest would allow him to convey such royalty interest because a unitization of the royalty and minerals under different tracts effects a cross-conveyance to the owners of minerals under the various tracts of royalty or minerals so that they all own undivided interests under the unitized tract in the proportion their contribution bears to the unitized tract. Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472.' [330 S.W.2d 687]. We overrule petitioner's second point."

■ Defendants argue that in any event, ratification by the Chrystal interest of the lease in controversy caused the entirety clause thereof to be binding upon Maddie Gaines and her successors. We are unable to agree.

As tending to sustain the foregoing contention, defendants cite Standard Oil Company of Texas et al. v. Donald et al. (Tex. Civ.App.), 321 S.W.2d 602. In that case

it was provided in the lease there under consideration that "If more than one person executes this lease as Lessor, or is *now* or shall hereafter become entitled, through change of ownership or otherwise to share in or receive the benefits accruing to Lessor hereunder, this lease shall nevertheless always be operated and developed by Lessee as a single tract."

In the last cited case lessor (appellees), prior to execution of the lease, had conveyed to appellants a non-participating mineral interest in one of the three tracts covered by the lease. After the lease was granted, appellants ratified same. The court held in substance that the effect of the entirety clause of the lease and subsequent ratification of the lease served to pool royalty production.

It is apparent to us that the use of the word "now" in the entirety clause under consideration in the cited case, rendered same applicable to minerals held in severalty at the time the lease was executed and that said clause therefore served to pool minerals so held at the time the lease was executed. This alone serves as a basis for the court's conclusion that the royalty oil was pooled.

It is pointed out in the foregoing opinion that "a party is bound, if at all, by his own contract, and not one made by others". Since the court recognized said fundamental principle, we are inclined to the opinion that no effect would have been given to ratification by owners of the non-participating royalty if, as here, they had not been embraced by the entirety clause.

In Willey et al. v. National Bank of Topeka et al., 145 Kan. 540, 66 P.2d 610, 618, this was said:

"* * * Ratification is the affirmance by a person of a prior act which did not bind him, but which was done or professedly done on his account whereby such act is given effect as if originally authorized by him. It has no application to situations where the original act was authorized. Restatement, Agency, § 82. * * *"

We said in the first paragraph of the syllabus to Hill et al. v. Tillman County Bank, 117 Okl. 210, 245 P. 628, that "'Ratification' is the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another, who, at the time, assumed to act or make the contract, without authority to do so."

As heretofore pointed out, Maddie Gaines had full power and authority to lease the Chrystal interest for oil and gas, therefore, her act in leasing said interest had been theretofore authorized by the Chrystal interest and ratification on the part of said interest was wholly unnecessary and did not serve to bind Maddie Gaines or the plaintiffs as her successors. We add, that by executing the lease—by virtue of the entirety clause—Maddie agreed and made known that she intended that minerals underlying the S/2 of NE/4 that she might thereafter sever from the surface should be pooled, such was not her agreement and intent as to minerals theretofore severed. To hold otherwise, would be tantamount to holding that Maddie Gaines made a contract which she in fact did not make.

For reasons stated, the judgment of the trial court is reversed and said court is directed to enter judgment in favor of plaintiffs as herein indicated.

WILLIAMS, C. J., and WELCH, HALLEY, JOHNSON and IRWIN, JJ., concur.

BLACKBIRD, V. C. J., and DAVISON, and JACKSON, JJ., dissent.

BLACKBIRD, Vice Chief Justice (dissenting).

I cannot concur in the majority opinion.

I do not subscribe to the "executive rights" rule for which it cites Texas cases. I think both the "rule", and the reason for it, formulated in Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472, are unsound; that this is indicated in the more recent Texas decisions of Williamson v. Federal

Land Bank of Houston, Tex.Civ.App., 326 S.W.2d 560, and Archer v. Webb, 161 Tex. 210, 338 S.W.2d 435, 441, 442; and that the rule is inapplicable here.

One who has reserved the so-called "executive" right to execute future oil and gas leases covering a certain interest in the minerals lying in and under a particular tract of land, and the right to receive the bonus and delay rental money paid for such leases (as did Maddie Gaines Harrison, in the "Oil and Gas Grant", or mineral deed, she, with her then husband, executed and delivered to T. F. Chrystal, on February 8, 1927, describing the W½ NE¼ of Sec. 34, Twp. 17 N., Rge. 1 E), certainly is a "lessor" within the unquestioned definition of that term. And the rule followed in both Oklahoma and Texas, is that when the (rightful) lessor of two adjoining tracts covers them with one, and the same, lease, he or she agrees, in effect, that the lessee may treat them as one leasehold—not only for the purpose of development (so that the drilling of a well on either of the tracts will continue the lease in effect past its primary term)—but for *all* purposes. See Southland Royalty Co. v. Humble Oil & Refining Co. (Tex.), 151 Tex. 324, 249 S.W. 2d 914, 916, 917. If this be true, then the lessee, not only *has the right* to pay the landowner's ⅛th share of the production to each of the owners of the minerals under *both* tracts (that have thus been merged, or fused, into one leasehold) in the ratio, or proportion, which his or her interest bears to the total acreage in said leasehold—but he *must* do this; othewise, some owners may never receive any consideration, or compensation, for the advantages of joint development thus given the lessee, and for the depletion of their mineral estate by such development. The Majority recognizes Maddie's lease, as unitizing *for development* the acreage it covers, but refuses to recognize its concomitant unitizing effect upon distribution of the royalty accruing thereunder. The gravity of this situation may be readily demonstrated by supposing that, in the present case, the only well on either of the 40-acre subdivisions of the 80 acres described in the Van-Grisso lease, had been drilled in Section Thirty-four's northeast quarter's southwest quarter, only a few feet west of said quarter section's eastern boundary. If the same rules, and line of reasoning, that the majority opinion has employed in awarding Maddie Gaines Harrison's heirs the entire ⅛th of all of the oil that has been produced from the southeast quarter section (which 40 acres I will hereafter refer to as "Tract I") were applied to such a hypothetical case, then Maddie's heirs would get no part of that well's production, even though a large part of it was naturally and necessarily drained from under the southeast 40 acres, or Tract I, in which they own the entire mineral estate. Surely, Maddie never intended such a result to accrue from her inclusion of said quarter section's southwest quarter, (hereinafter referred to as "Tract II"), in the same lease, with her Tract I. Nor do I think T. F. Chrystal, when he accepted the oil and gas "grant", or mineral deed, from Maddie, with her reservation of the executive rights over future leasing written into it, ever intended to subject himself to the detriment that could befall him by the drilling of a well immediately east of Tract II, on Maddie's Tract I. In respect to such considerations, see the discussion pertaining to Galt v. Metscher, 103 Okl. 271, 229 P. 522, in the Annotation at 64 A.L.R. 634.

While there may be an historic reason for fabricating a theory, or fiction, of "cross-conveyancing" to sustain the apportionment of royalty rule in States like Texas and Arkansas, which subscribe to the ownership of oil in place doctrine (see Osborn v. Arkansas Territorial Oil & Gas Development Co., 103 Ark. 175, 146 S.W. 122), I do not think it is necessary to find such a theory on which to sustain it in Oklahoma, where the "recovery" right to natural oil and gas deposits has been referred to as a profit a prendre, connoting only qualified (as distinguished from absolute) ownership of an incorporeal (rather than a corporeal)

hereditament (Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 89, 3 A.L.R. 352). Many of this court's early decisions, and all of our later ones, deal in an enlightened manner with, and are attuned to, the recognized fugitive nature of oil and gas, and the correlative rights of adjoining owners in a common source of oil and gas supply. See Panhandle Eastern Pipe Line Co. v. Corp. Comm., Okl., 285 P.2d 847, 853.

But, assuming that one, who has only the "executive" right to lease a mineral interest, cannot merge it with another such interest for the purpose of the apportionment of the producing royalty from the single leasehold created under his or her said lease, because he or she does not own said interest, or have the right to convey, or cross-convey, it in return for the same proportionate interest in the adjoining tract, or part, of said leasehold, such a theory would not apply to apportionment of the oil produced by the well on Tract I, *because Maddie owned the entire mineral estate in that tract, and, of course, could convey, or exchange, it at any time.* When the owners of the Chrystal interest thereafter ratified Maddie's lease, they in effect, agreed not only to the extension, over their interest in Tract II, of Maddie's base lease past its primary term (in the event of the drilling of a well on her solely owned adjoining Tract I)—but they also bound her to share with them the landowners 1/8th of any commercial production that might be obtained on Tract I, in return for sharing with her the production that might be obtained on Tract II. In other words, the previous bilateral agreement, or lease, between Maddie, the lessor, and Van-Grisso, the lessee, had, because of Van-Grisso's precaution of obtaining the ratifications, became a tripartite, or trilateral, agreement. All of the authorities recognize that it is not necessary for all of the owners to sign one and the same instrument in order to create a unitizing lease, or contract. See, for instance, Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472, 475, cited in the quotation from Minchen v. Fields (Tex.), 345 S.W.2d

282, 285, appearing in the Majority opinion, and Thomas v. Ley, 177 Okl. 150, 57 P.2d 1186, 1188, cited in the Veal case.

Furthermore, I think the majority opinion attaches undue and unwarranted significance to the word "hereafter" in the lease's "entirety" provision. To my way of thinking, that word is the only word that needs to be used in such a lease provision to effect apportionment at any time *after the lease is executed and delivered,* and production is obtained thereunder. The word simply connotes the opposite of "heretofore" and the words "now are or", if also inserted with "hereafter" in such a provision, could add nothing, because no provision of any lease ordinarily has a retroactive effect, or purports to become effective until "hereafter"— meaning: After the lease is executed and delivered and can then (for the first time) affect the land in any way. I join Mr. Claud O'Quinn, author of the article, beginning at page 125 of the "Eighth Annual Institute on Oil and Gas Law and Taxation" in thinking that the addition of the words "now are or" to the expression: "If the leased premises * * * shall hereafter be owned severally or in separate tracts * * *", *originated in a jurisdiction where the leasing of adjoining tracts does not have the automatic, or presumptive, effect of pooling, as it does in Oklahoma.* In any event, the fact that such words have been added to the entirety provision of some leases has never had the effect of overcoming the presumption which has existed in this State as early as the 1924 case of Gypsy Oil Co. v. Schonwold, 107 Okl. 253, 231 P. 864, and later than the 1942 case of Peerless Oil & Gas Co. v. Tipken, 190 Okl. 396, 124 P.2d 418, that when two adjoining tracts are included in the same oil and gas lease, it is contemplated that they be mined *and operated* for the production of oil and gas *in all respects* as one unit or leasehold. In the Peerless case, this court adopted with approval, the reasoning of the West Virginia Supreme Court in Lynch v. Davis, 79 W.Va. 437, 92 S.E. 427, L.R.A.1917F, 566, that the presumption of this intention, or

contemplation, is based upon the presumed knowledge of the parties to the lease concerning both the rights of the lessee and the fugitive character of oil and gas in place. In the Gypsy Oil Company Case, supra, this court said:

> "A small amount of practical knowledge of the oil and gas industry must be persuasive that in numerous cases a just and equitable division of the royalty, in the absence of such clause, is all but an impossibility. Many tracts of land, rich in the production of oil, are subdivided by their owners until the tracts become so small that it is improbable that any well will be drilled upon all the tracts, if indeed they are not so small that it is impossible to drill upon each tract."

Here, by including in the same lease with her own solely-owned Tract I, and her undivided 10-acre interest in Tract II, the Chrystal undivided 20-acre interest in the latter tract, Maddie Gaines Harrison could *not* give Van-Grisso the right to drill on any particular geographical area, or subdivision except the SE¼ NE¼ of Section 34 (Tract I), but she could authorize the owners of said undivided interests to share with her in the royalty from any well drilled on that tract. Since this has been the effect of such a lease in this State for so many years, I think it should be accorded the stability and weight of a rule of property, and should not be renounced in the absence of the most impelling reasons. To paraphrase language of the Texas Supreme Court in Southland Royalty Co. v. Humble Oil & Refining Co., supra, 151 Tex. 324, 249 S.W.2d 914, 916: No doubt many leases like the one Maddie Gaines Harrison then Smith and her husband executed and delivered to Van-Grisso Oil Company on January 12, 1952, have been executed and delivered by lessors, and accepted by lessees, *in Oklahoma, in reliance on the applicability of the apportionment rule to them.*

The trial court was correct in refusing plaintiff's claim of exclusive right to the royalty owners' entire ⅛th of the oil produced through the well on Tract I, but he fell into error in computing the fractional parts thereof. As Maddie's successors, plaintiffs were entitled, because of the above-described pooling, or unitization, of that tract with Tract II, to 50/70ths of that production, instead of only 50/80ths, as the trial court held. This court should therefore reverse and remand the trial court's judgment, and order the entering of a new one directing distribution of the oil production involved herein in the following manner:

To plaintiffs, 50/70ths, and to the present owners of the T. F. Chrystal interest, 20/70ths —of ⅛th of the Tract I well's production; and to said parties collectively (or individually, in proportion to their fractional interest in Tract II) 30/40ths, or ¾ths, of ⅛th of the Tract II well's production;

To the present owners of the Slick interest, ¼th of ⅛th of the Tract II well's production.

For the foregoing reasons, I respectfully dissent.