### GALT et al. v. METSCHER et al.

No. 11756—Opinion Filed Oct. 23, 1923.

Rehearing Denied Oct. 14, 1924.

**1. Oil and Gas — Leases — Royalties — Effect of Transfer.**

When a 160 acre tract lying in one body has been leased for oil and gas by a lease contract on the ordinary commercial form, and thereafter the owner of the fee sells the royalty interest in the south 80 acres, retaining the royalty interest in the north 80 acres, the owner of each 80 acre tract holds the same subject to such oil and gas mining lease, and should the lessee thereafter discover and produce oil from the leased premises, the owner of the royalty interest in the tract on which the oil well is located is entitled to the royalties accruing from such oil production.

**2. Same—Division of Royalty Interest.**

A provision in such oil and gas mining lease permitting assignment in whole or in part, does not make the lease a separate lease upon each tract of land so assigned, but the same remains a lease upon the entire tract of land, and none of the rights, privileges, or appurtenances of the owner of the oil and gas mining lease are impaired by a division of the royalty interest. Pierce Oil Corporation v. Schacht, 75 Okla. 101, 181 Pac. 731.

**3. Same—Mistake in Location of Producing Well.**

Oil and gas development. Where a lessee owned an oil and gas mining lease on an undivided tract of 160 acres in which the royalty interest had been divided so that A. owned the north 80 and B. owned the south 80 and said lessee located a test well four feet north of the dividing line of said tracts, it being the intention of the lessee to locate said well on said dividing line, and said actual location having been made through a mistake of oil lessee's engineers, held that these facts do not constitute any cause of action in favor of the owners of the south 80 against the owners of the north 80 or against the oil lessee.

(Syllabus by Lyons, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Garfield County; J. C. Robberts, Judge.

Action by Susanne Metscher and another against Edward Galt and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Ledbetter, Furman & Ledbetter, for plaintiffs in error.

Edward H. Chandler, Summers Hardy, and T. J. Hanlon, for defendant in error Exchange Oil Company.

Harry O. Glasser and Nathan Scarritt, for defendants in error Susanne Metscher et al.

Opinion by LYONS, C. This action was brought by Susanne Metscher and another, as plaintiffs, against the Exchange Oil Company, the lessee in an oil and gas mining lease executed by plaintiffs. Galt and others, (plaintiffs in error) were made parties when it appeared during the proceedings that they claimed an interest in the subject-matter of the action.

It appears that the Metschers were the owners of a 160-acre tract, undivided and lying in one body, upon which they executed an oil and gas mining lease to the Exchange Oil Company; that said lease is on the ordinary form and contains the following material provision:

"If the estate of either party hereto is assigned and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to the assigns and successive assigns, but no change in the ownership of the land or assignment of rentals or royalties, shall be binding upon the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof."

It appears that some time after the exe-

cution of said oil and gas mining lease covering said undivided 160 acre tract, the plaintiffs conveyed their royalty interest in and to the south 80 of the 160 acre tract, to Galt and others, plaintiffs in error, retaining the ownership of the north 80.

The oil and gas lessee decided to drill a well on the premises and instructed its engineers to make a location on the dividing line of said tract to the end that the royalty from said well (in the event that same was productive) should be participated in by the owners of the north 80, and by the owners of the south 80.

After the well was drilled it was contended and subsequently discovered to be the fact, that said well was, through the mistake of the oil lessee's engineers, located **four** feet north of the dividing line and was therefore entirely on the Metschers' property. No agreement had been entered into between the owners of the south 80 and the owners of the north 80, that said well should be located on the line, or that all of the owners should participate in the royalty therefrom in the event said well turned out to be a producer.

The lower court appointed a receiver to hold the royalty accruing from said well pending a determination of the controversy, but this order was subsequently modified so that it applied only to one-half of the proceeds of the royalty, the other one-half being delivered to the Metschers. It is apparently conceded by the owners of the south 80 (Galt and others) that since the well is located on the north 80 the owners of the said tract are entitled to said royalty. However, the owners of the south 80 claim that they should have relief against the oil lessee in the form of a money judgment to make whole the damage caused by the drilling of the well four feet from the line. They contend also that in default of such relief a court of equity should require the oil lessee to drill on their premises an offset to the well located on the north 80. The lower court made the following finding of fact:

"It appeals to my conscience as a matter of fact, that the defendants or cross-petitioners, ought to be entitled to some relief."

The lower court also decided upon a consideration of the entire case, that no grounds for legal relief existed and rendered judgment against the cross-petitioners denying relief. We concur in the action of the trial court.

The rights of the lessee in the oil and gas mining lease were fixed before any conveyance of the royalty interest was made.

Galt and others bought the royalty in the south 80 with full knowledge of the lease and with a complete understanding of the burden fastened on the land by the existence of the lease. The conveyance and division of the royalty interest by a transfer does not operate as a partition. All remains as if no conveyance had been made so far as the rights and privileges of the oil and gas lessee in the matter of development and operation are concerned. This question is not open to controversy in this jurisdiction. The Supreme Court of this state has settled it in Kimbley v. Luckey, 72 Okla. 217, 179 Pac. 928. The court further specifically dealt with this question in the case of Pierce Oil Corporation v. Schacht, 75 Okla. 101, 181 Pac. 731.

The plaintiffs in error (Galt and others) rely on the case of Guffey Petroleum Company v. Jeff Chaison Town Site Co. (Tex.) 107 S. W. 609. This case is not applicable to this controversy. Mr. Justice McNeill in the opinion in the Schacht Case, supra, said:

"The plaintiffs rely upon the case of Guffey Petrol. Co. v. Jeff Chaison Town Site Co., 48 Tex. Civ. App. 555, 107 S. W. 609, on the question of separation of leases, but we do not think this case is in point. No such question as that arises in the case at bar."

See, also, McCallister v. Texas Company, 223 S. W. 859, where the Court of Civil Appeals of Texas in the year 1920 announced the rule in harmony with the decisions of the Supreme Court of Oklahoma. The fifth paragraph of the syllabus is as follows:

"Where the owner of four tracts of land executed a lease to the four as an entirety, purchasers of two of the tracts could not divide the contract into separate parts, and enforce a forfeiture of the lease in part only, while it was valid as to the remainder, the purchaser acquiring no better right than the vendor possessed."

Petition for writ of error was denied by the Supreme Court of Texas, 226 S. W. 20. The question is not, therefore, open at this time.

We now notice the argument and authorities of plaintiffs in error relative to drainage and the drilling of offset wells. Such argument assumes what the Schacht Case specifically denies, and is based on the proposition that a conveyance of a portion

of the royalty interest amounts to a partition and that each owner may treat the part owned by him as a separate tract covered by a separate lease. This proposition falls under the logic of the rule announced in the Schacht Case.

It is further said that the provision of the lease hereinbefore set out is in effect a consent to a partition and a recognition thereof. We think that such a conclusion would require a perversion of the language of the lease contract which merely authorizes either of the parties to assign his estate in whole or in part, thereby obviating the necessity of securing consent to the assignment.

The purchaser of the "south eighty royalty" took it burdened with all of the rights, privileges, easements, and appurtenances fastened thereon by the incumbrance of the oil and gas mining lease covering one tract of an undivided 160 acres. The oil lessee had a right to locate its well on the north 80 and the owners of the north 80 had a right to receive all of the royalty accruing from such drilling operations. The owners of the south 80 were only entitled to royalty from development had on the south 80. Pierce Oil Corporation v. Schacht, supra.

It is not contended that the well was located on the north 80 by collusion; on the contrary it is conceded that the location was made in good faith by mistake. If the mistake had been made favorable to the owners of the south 80 royalty, they would have received the benefits of the production. If royalty owners desire to avoid the incumbrance created by a subsisting oil and gas mining lease, the protective remedy is an agreement among themselves and with the oil lessee, prior to drilling. The legal rights of the parties in this action are fixed by contract.

Plaintiffs in the court below (Metschers) recovered judgment for the full amount of the royalty oil produced from the well in controversy. All claims of Galt et al. against plaintiffs and against the oil lessee were denied. This judgment accords with the law and the evidence and must be sustained.

The judgment of the lower court is correct, and is affirmed.

By the Court: It is so ordered.