## BRAZELL v. BROWN et al.

No. 23402.   Oct. 16, 1934.

Supplemental Opinion on Rehearing and Rehearing Denied Dec. 4, 1934.

Cutlip & Cutlip, for plaintiff in error.

Reily & Reily, for defendant in error B. T. Brown.

Blakeney, Ambrister & Wallace, for defendant in error Magnolia Petroleum Company.

PER CURIAM. On April 25, 1928, B. T. Brown, R. B. Rippetoe, and Esther E. Rippetoe, as lessors, executed and delivered to James Brazell, as trustee, an oil and gas lease on two tracts of land in Pottawatomie county, described as follows: Beginning 8 rods east of the southwest corner of section 14, township 7 north, range 4 east, thence north 140 feet, thence east 25 feet, thence south 140 feet, thence west 25 feet to the place of beginning; and beginning at the southwest corner of said section, thence north 209 feet, thence east 104 feet, thence south 209 feet, thence west 104 feet to the place of beginning.

Said two tracts of land were owned in severalty, the first by the Rippetoes and the second by Brown. The lease was on a regular producers 88 form. In it Brown and the Rippetoes are referred to as "party of the first part, hereinafter called lessor (whether one or more)." The duration of the lease was to be as long as oil or gas is "produced from said land by the lessee." The consideration expressed is one dollar, "and of the convenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed." The lease provides "In consideration of the premises the lessee covenants and agrees: (1) To deliver to the credit. of the lessor, free of cost in the pipe lines to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises." The lease further provides that lessee shall pay lessor, at the market price, for one-eighth of all gas used off the premises or in the manufacture of casinghead gasoline. The lease further provides that lessee, as part of the consideration, would drill a well on the Brown tract, and that failure to comply with said drilling provisions would render the lease void.

In accordance with the terms of said lease a well was drilled on the Brown tract, resulting in a producing oil and gas well. The oil was purchased by the Magnolia Petroleum Company, but when a dispute arose as to the division of the royalty oil, the purchaser refused to pay for the same, and this action was filed by Brown against said purchaser to recover for the entire one-eighth of the royalty oil.

James Brazell filed an intervening petition in which he alleged that on July 23, 1930, he became the owner of the royalty and all the mineral rights in the Rippetoe tract. He further alleged that the said Rippetoes "executed the said lease contract with the full and determined understanding and agreement, which was inadvertently and by accident omitted from the written lease contract, that each of the first parties to the said contract would participate in the proceeds from the oil, gas and other minerals, and royalty interests, on the ratio of the land area of the first parties, as set out and described in said lease contract." He further alleged that the land area of the Rippetoe tract was 13.869 per cent. of the whole, and the area of the Brown tract was 86.131 per cent. of the whole, and that the royalties should be divided in those proportions, and that there is due him the sum of $941.42.

Said intervening petition contains a second cause of action, in which the intervener alleges that Brown and Rippetoe and the other interested parties on August 7, 1928, signed a division order for the sale to the Tri-County Gas Company of the gas, whereby the gas royalty was divided between Brown and Rippetoe in the proportions above stated, and intervener alleges that he signed said division order, and he alleges that Brown is now estopped from claiming more than his proportionate share of the oil royalty. Copies of said lease, division order, and a statement of the oil runs from said lease from September 13, 1928, to May 14, 1931, are attached to said intervening petition.

The plaintiff filed a general demurrer to said intervening petition and from an order sustaining said demurrer this appeal was taken.

From the foregoing statement we think the lower court must have reached the conclusion that the agreement for the division of the royalty varied the terms of the lease contract, and was for that reason unenforceable. In this we think it was in error. A careful study of the lease discloses that there were only two parties to the contract, on the one side the three lessors as the first party, and on the other side the lessee as the second party. The lease merely defines the duties and rights of the second party as against the first party. It does not in any respect define the rights of the three persons constituting the first party as between themselves. The lessee was not concerned with how the lessors were to divide the royalty, and as between the lessors and the lessee it was not necessary to insert such a provision in the lease. The intervening petition alleges that there was a separate agreement between the lessors on this subject, but does not allege whether it was verbal or in writing. The surrounding circumstances, and the fact that the two tracts owned in severalty were included in the same lease, and that the well was to be drilled on the Brown land, and no provision was made for drilling on the Rippetoe land, and that the lease was to continue on both tracts as long as oil or gas was produced from either, make it reasonable to assume that there was some agreement as to the division of the royalty. The lease being silent on this subject, such an agreement is in addition to the provisions of the lease, and does not add to or take from the written lease, and is enforceable whether verbal or in writing.

There is very little authority on the identical question involved in this case. Our attention has been called to only two cases, Rymer v. South Penn Oil Co. et al. (W. Va.) 46 S. E. 559, and Higgins v. California Petroleum Corporation (Cal.) 41 P. 1087.

In the Rymer Case, supra, the syllabus is as follows:

"1. Where several owners in fee of contiguous tracts of land lease the whole as one tract for oil and gas purposes, and the one-eighth royalty oil is to be paid by the lessee in the usual way by running the same into the pipe lines to the credit of 'the parties of the first part' (the lessors), and the lease is silent as to the division of the royalty between the lessors, and where the development is all on one tract owned in severalty by one of the lessors, who claims to be entitled to all the royalty, upon interpleader of the lessee for determination as to whom

to pay the royalty as between the lessors, parol evidence is admissible to prove a contemporaneous agreement between the lessors that the royalty should be paid and delivered to the owner of the particular tract from which the oil is produced."

In the body of the opinion, the court says:

"It is claimed by appellants that the court could look only to the language of the lease itself for its construction, the same being unequivocal, clear and unambiguous. As between the lessors upon the one side and the lessee upon the other side, this clearly appears to be true; there is no ambiguity, but is there any contract anywhere in the lease as between the individual lessors? Not a word to show the relation between them; they have individual rights as between themselves. The lease shows that the royalties and the consideration for the gas which might be sold from the premises was to be paid and delivered to 'the parties of the first part,' but it is not provided as to how it shall be divided between them when received. * * *

"The oil to be paid as royalty is the consideration paid for the oil sold and taken from the premises. Where it is not provided how the consideration is to be applied, or how it shall be divided between or among those entitled to receive it, parol evidence is admissible to explain that which is not expressed."

The Higgins Case, supra, holds that, in the absence of an agreement between the owners of the separate tracts included in the same lease, the royalties would be divided the same as if the lessors were tenants in common, and that the royalty would be divided in the proportion that the value of each separate tract bears to the value of the whole.

In the case of McClure v. Century Estates (Fla.) 120 South. 4, the court uses this language:

"'The rule excluding parol evidence to vary a writing has been held to be not applicable in a controversy between parties to an instrument whose interests thereunder are the same, or their privies.' 22 C. J. 1294. See, also, Chamberlain v. Lesley, 39 Fla. 452, 22 So. 736.

"In the case last above cited, this court held that the law preventing the introduction of parol evidence to vary or contradict the terms of a mortgage and notes did not apply in an action between Chamberlain and Lesley, wherein one was seeking to recover from the other compensation for money paid by him because of having executed the note and mortgage to a third person, for the other's accommodation. Mr. Justice Carter, speaking for the court, 39 Fla. 457, 22 South.

738 (text) says: 'The papers, neither separately nor combined, purported to state all the terms of the agreement between the plaintiff and defendant. As a matter of fact, the notes and mortgages were not contracts between the plaintiff and the defendant, but were contracts between the plaintiff and the defendant on the one part, and a third party on the other. These papers purported to show the contract between the plaintiff and defendant to and with a third person, but not as between themselves'."

Brown contends that the alleged agreement is personal to the Rippetoes, and that their grantee cannot enforce it. We do not entertain this view. The petition in intervention does not seek to reform the lease so as to make it contain the agreement, but seeks to recover the royalty under the separate contract. The conveyances under which intervener claims to own the royalty are not set out in the transcript filed in this court, but in his petition the intervener alleges that he became vested with all the rights and interests of the Rippetoes. It is not contended that such rights are not assignable. Intervener is claiming a share of the royalties that have accrued since September 13, 1928, although he claims to have acquired title to the Rippetoe royalty interest on July 23, 1930. His rights will be determined by the provisions of the conveyances under which he claims title.

We do not believe the intervener pleads enough in his second cause of action to entitle him to relief by estoppel. He was not a party to said division order, and his allegation that he signed same is not borne out by an inspection of the copy attached to his petition. He does not allege that Brown made any representations to him to induce him to buy said royalty interest. Said division order covered only the gas. It is possible that the lessors may have had a different agreement as to the division of the oil and gas royalty. As the cause must be reversed upon other grounds and a new trial ordered, the pleadings relative to estoppel may be amended to plead further facts and make such plea more specific, definite, and certain, provided the pleader desires so to do and can plead a good cause upon that issue consistent with the views herein expressed.

The judgment of the lower court is reversed, with instructions to overrule the demurrer to the first cause of action of the intervening petition, and as to the plea of estoppel in the event the intervener tenders a proper plea upon that issue.

The Supreme Court acknowledges the aid of District Judge Thurman S. Hurst, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion, as modified, was adopted by the court.

On Rehearing.

McNEILL, J. On rehearing our attention has been called to the case of Lusk v. Green, 114 Okla. 113, 245 P. 636, and it has been suggested that it conflicts with the opinion in the case of Higgins v. California Petroleum Co. (Cal.) 41 P. 1087, cited in the opinion in this case. A careful examination of the two cases shows that the facts are widely different and distinguishable, and we do not consider the law announced in either of those cases is in conflict with the views expressed herein.

In the case of Lusk v. Green, supra, a husband and wife, owning separate tracts of land located several miles a part, joined in an oil and gas mining lease covering said tracts. There was no provision in the lease designating which tract the first well should be drilled upon, and the court held that there was no intimation in the record that it was the intention of the lessors for each to share in the other's royalties, and, under such facts, this court held that, in the absence of affirmative evidence to the contrary, it would not be presumed that either the husband or wife intended to convey to the other a royalty in interest in his or her land.

In the instant case the intervener alleged in his petition that at the time of the execution of the lease an oral contract had been entered into between him and the other lessor for a division of the royalties. The two tracts of land here involved are contiguous and the lease contained a provision for drilling the first well on the Brown tract.

In the Higgins Case, supra, a joint lease for mining asphaltum was executed by owners of two contiguous tracts, the Ashley and the Higgins tracts, respectively. The defendant therein became the sole owner of said lease by assignment. It appears that the lessors were not tenants in common of any part of the land described in the lease, nor of any part of the "deposit of bituminous rock" leased, but that each severally owned a definite part of both, adjoining each other, and the "deposit" leased extended horizontally through the contiguous lands of both lessors as described in the lease. Thereafter, the owner of the Ashley tract conveyed all that

part of the land to the defendant. There was no agreement between the two lessors as to division of the royalties.

The court, in paragraphs 1 and 2 of the syllabus, said:

"1. A joint lease for mining purposes, executed by owners in severalty of two adjoining tracts, provided that the lessee should pay as royalty a certain sum monthly to the lessors. One of the lessors subsequently conveyed his separate tract to the lessee. Held, that the remaining lessor was entitled to royalty thereafter in an amount equal to the value of his distinct tract as compared with that conveyed to the lessee.

"2. Where a mining lease, executed jointly by owners in severalty of adjoining tracts, provided that the lessee could extract asphaltum from any part of the leased premises, and the share of one lessor was subsequently conveyed to the lessee, it is no defense, to an action by the remaining lessor for royalties, that no asphaltum was taken from his separate tract."

In the body of the opinion, the court also said:

"And in this case the terms of the lease warrant the presumption that each lessor was to receive one-half of the royalty, and such presumption is in perfect accord with the practical construction of the lease, by the parties thereto, up to April, 1893. The fact that, prior to the commencement of this action, the lessee had elected to mine only in that part of the 'deposit' lying within the Ashley tract detracts nothing from the right of Higgins to demand his proper share of the royalty, nor from the obligation of defendant to pay it. The royalty of 50 cents on each ton of rock mined was, by the terms of the lease, to be paid to the lessors, not to the individual lessor from whose land the rock may have been mined. The lease does not restrict the mining to any particular part of the deposit at any time. The lessee has had the right, at all times since the execution of the lease, to mine any part of the deposit, and will continue to have such right until the expiration of the term of 20 years, only about 5 years of which had elapsed when this action was commenced; and more than one-half of the term is still in the future, during which defendant is at liberty to mine exclusively in that part of the deposit lying within the Higgins tract, and may completely exhaust it. The royalty per ton of the rock mined is but a mode of estimating the rent to be paid for the right to occupy exclusively the whole premises demised, and to mine any part or all parts thereof at any time during the term, at the election of the lessee."

It is to be observed that in the Higgins Case, no issue was presented as to whether the lessors entered into an oral agreement to share in the royalty derived from the lands of each other. Rehearing denied.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, OSBORN, BAYLESS, and WELCH, JJ., concur. BUSBY, J., dissents.