### SEAL et al. v. BANES et al.

No. 27084. May 3, 1938.

Rehearing Denied June 28, 1938.

John B. Harrison and Hall & Thompson, for plaintiffs in error.

Carter Smith, for defendants in error.

RILEY. J. This is a second appeal in this action. The suit, in its origin, is one in the nature of ejectment and to quiet title, commenced by defendants in error.

The parties herein will be referred to as in their original relation, the Banes minors as plaintiffs, and the Seals as defendants. The facts out of which the action arose are fully stated in the opinion affirming the first judgment rendered in favor of the plaintiffs, and in the dissenting opinion appearing in Seal v. Banes, 168 Okla. 550, 575, 35 P.2d 704, to which reference is made, and need not here be restated. This appeal grows out of subsequent proceedings in the trial court. The judgment affirmed was one holding that the plaintiffs were the owners in fee of an undivided two-thirds interest in 33 lots in blocks 5 and 6, in Compton Park addition to Oklahoma City, and enjoining defendants from claiming any right, title, or interest as to such undivided two-thirds interest in said premises, hostile or adverse to the title and possession of the plaintiffs. Said lots had been sold at administrator's sale as the estate of the father of plaintiffs. The widow inherited the other one-third interest, and the sale was apparently valid as to her interest.

Defendants claimed title absolute under the administrator's deed, and mesne conveyances, and had been in possession for several years. Before the action was commenced, defendants had executed an oil and gas mining lease conveying the 33 lots, together with five other lots in said blocks owned by defendants. About the time the action was commenced plaintiffs, by their guardian and with the approval of the county court. entered into a compromise agreement with the oil and gas lessees whereby they in effect confirmed the oil and gas lease without prejudice to their rights to prosecute the action as to their title, and the validity thereof was thereafter recognized. The lease provided for the payment of one-eighth royalty to the owner. The lease by assignment passed to the Champlin Oil & Refining Company. Two oil wells were drilled on the lots here involved, and the one-eighth royalty payments were withheld by lessee pending final decree in the suit. When the lots involved were sold at administrator's sale they were mortgaged for about $2,200, and the administrator's sale was made subject to said mortgage. The purchaser paid $1 000 and assumed the $2,200 mortgage. This mortgage was later renewed and was finally paid off in full by defendants.

Defendants in the suit to quiet title apparently stood upon the title conveyed by the administrator's deed, which was held void.

In affirming the judgment and decree this court said:

"The defendants did not ask for any affirmative relief, but elected to stand upon the purported title conveyed by the administrator's deed based upon a void sale. They did not ask to be subrogated to the rights of the mortgagee, and that issue is not before the court for consideration at this time. The only issue before this court is the validity of the sale made by the administrator. We are not passing upon any equitable issues which the parties may invoke in adjusting their rights.

"We are of the opinion, and hold, that the sale was void, and that the judgment

of the trial court should be, and is, in all things affirmed."

After the judgment and decree was so affirmed and the mandate was spread of record, defendants, apparently taking the position that none of the equitable issues which were or might have been raised and adjudicated in the original action were passed upon in the decision affirming the judgment, filed in the district court, under the title and number of the original action, a petition wherein it is alleged:

"Defendants allege that the equities in the case cannot be determined from the opinion of the Supreme Court, that defendants have substantial and valuable equities in said cause, and are entitled to a specific finding as to such equities as defendants may show themselves entitled to receive."

It is then alleged in substance that when the lots in question were sold at administrator's sale there was an existing mortgage thereon in the sum of $2,200; that said lots were sold for the sum of $1,000, subject to said mortgage; that they purchased said lots from the grantee in the administrator's deed in good faith and paid therefor the sum of $3,400, and went into possession and placed valuable improvements thereon of the value of about $3,091, and paid taxes on said premises for ___ years in the sum of about $100, and prayed that plaintiffs be charged in equity with their share of the costs of improvements and their pro rata share of taxes paid by defendants.

To this petition plaintiffs filed answer wherein they asserted in substance the former judgment wherein defendants were enjoined from asserting any right, title, or interest in the premises as res adjudicata, and then alleged in substance that when defendants went into possession of said lots there was a five-room house and other improvements thereon, and that said defendants had removed all of said improvements from said premises and had been paid therefor, together with the surface rights, the sum of $6.126. no part of which had been paid to plaintiffs.

Plaintiffs also filed a cross-petition, alleging in substance that as to the two-thirds interest in said premises defendants were not innocent purchasers in that they purchased with notice of the invalidity of the order decreeing sale of the minor's interest in the premises; that defendants entered into possession of said premises about October 1, 1922, claiming not only the one-third interest represented by the widow's

interest in said lots, but the entire title and had held and retained said premises since that date; that the premises had a reasonable rental value of $45 per month, and that plaintiffs' two-thirds interest had a reasonable rental value of $30 per month, and prayed for judgment on account thereof in the sum of $3,300; plaintiffs further alleged that defendants had sold or removed the five-room house, and all other improvements, and had received therefor $6,026, of which plaintiffs were entitled to two-thirds, or $4,084, for which they prayed judgment. They further alleged that defendants had wrongfully caused the Champlin Oil & Refining Company to withhold payment of the one-eighth royalty from the oil produced from said premises in the sum of $17,036.69, representing their two-thirds interest in such royalty, whereby they were entitled to interest on said sum at 6 per cent. for the time it was so withheld, amounting to $2,350.06, for which they prayed judgment, or judgment for the aggregate sum of $9,734.06.

Defendants replied thereto by particular denial of all plaintiffs' claims, and further alleged that the total one-eighth royalty interest in the oil produced by the Champlin Refining Company under its lease amounted to $25,554.99, and that defendants were entitled to 3/38 thereof by reason of their ownership of five of the 38 lots covered by the lease which were not in litigation, and one-third by reason of their ownership of the one-third interest in the lots involved herein which they acquired as the one-third interest inherited by the widow, and specifically denied that plaintiffs were entitled to any part of the remaining royalty.

Champlin Refining Company was later made a party defendant on motion of plaintiffs, and their pleadings were amended so as to claim judgment against the Refining Company for $17,036.66, the amount of accrued royalty plaintiffs assert represented their two-thirds interest in the one-eighth royalty produced from the 33 lots involved.

The Champlin Refining Company answered and alleged in substance that it was merely a stakeholder, and had withheld payment of royalty upon notice of the claim of plaintiffs; that the proceeds from all oil and gas produced from the lease to the credit of the "undivided 2/3 interest of the 1/8 royalty is $17.075.07, which sum is hereby tendered into this court for the use and benefit of the persons who may be adjudged to be the lawful owners thereof."

The Refining Company further pleaded a

division order signed by all the parties in interest before the payment of any royalties from said land which in part provided:

"Two-thirds (2/3) of the ⅛ royalty is in litigation between Anne Corley Seal and C. W. Seal, her husband, of the first part, and Kenneth Lee Banes and Maxine Banes, minors, by Oscar Cobb, their guardian, of the second part, Champlin Refining Company agrees to hold proceeds due said royalty interest in trust for the successful litigants.

"The Champlin Refining Company is hereby authorized, until further notice, to receive oil from the said wells for purchase from said parties severally in the proportions named. * * *"

The Champlin Refining Company later filed an amendment to their answer wherein it alleged in substance that defendants C. W. Seal and Annie Corley Seal executed to it a quitclaim deed dated September 30, 1930, whereby they conveyed all their interest in all the lots covered by the lease, reserving the mineral rights and certain personal property, and alleged that:

"* * * Said quitclaim deed was also intended and treated as a sale of all the buildings, fences and other appurtenances on said property, except one gasoline engine, one gasoline water heater, some trees, some chicken fence. and one small chicken house, which said Seals were to remove within sixty (60) days. and that at the time of the execution of said quitclaim deed and delivery of the same, the Champlin Refining Company, this defendant, paid to the said Annie Corley Seal and C. W. Seal, as consideration for said quitclaim deed, and the improvements, as aforesaid of every kind and description, the sum of $2 626, which was an adequate consideration for the improvements passing to this company, Champlin Refining Company."

It further alleged that plaintiffs had elected to and had waived their claim as against said company for or on account of any of their rights and to the property conveyed by such quitclaim deed and had elected to sue defendants for such interest.

The latter allegation was admitted by plaintiffs in a reply.

The issues thus framed were tried to the court, which after extended hearing made findings of fact. conclusions of law, and entered judgment in which it held:

"The court finds that as to the relief sought by the Seals in their new proceedings instituted on the 8th day of October, 1934. that these are matters which they should have asserted in their answer. by cross-petition. which they filed in the original suit on the 25th of October, 1930, as all the matters now alleged in this new proceeding were germane to the issues therein and could or might have been litigated and determined therein, and having failed to assert such claims, they cannot now relitigate the same, and the court finds that the decree of the court, rendered July 14, 1931, forever estops and bars them from now asserting the same."

The court found that the two wells were drilled upon lots in which plaintiffs owned a two-thirds interest; that the defendants entered into possession of said premises and retained same from the 1st day of October, 1923, until about October, 1931, with the exception of about one month. a period of 95 months. That said premises had the reasonable rental value of $21 per month, of which plaintiffs were entitled to two-thirds, or $14 per month, and gave judgment therefor in the sum of $1,350. The court further found that the value of the improvements at the time they were sold to the Champlin Refining Company was $1,800, of which plaintiffs were the owners of two-thirds interest, and judgment was given plaintiffs therefor in the sum of $1,200, being a total of $2,550. The court, however, found that defendants had placed improvements on the lots to the extent of $500 in value. and allowed them an offset to the extent of two-thirds thereof, or $333 32, and found that defendants had paid taxes on the premises in the sum of $200.41, and allowed them a further offset of two-thirds thereof, or a total offset reducing plaintiffs' judgment to $2,016.27.

Plaintiffs were decreed to be owners of all the oil and gas royalties withheld by the Refining Company, and directed the company to pay same into court. Interest on the money so withheld was denied.

From this judgment defendants appeal, and plaintiffs have filed a cross-petition in error.

The first contention made by defendants is, in effect, that plaintiffs are entitled to recover only for two-thirds of what was actually sold at administrator's sale. In this connection they assert that all the administrator had to sell and all that was in fact sold was "only and solely" a $1 000 equity in the lots in question; that the sale which the court set aside was only a sale of that $1,000 equity, and that it sold for $1,000. and the most plaintiffs could recover would be two-thirds of the amount for which the property sold, $366.66 and that proportion of the royalty which $666 66 bears to the total value of property, fixed

at $3.200, which is the amount of the mortgage existing against the lots plus the $1,000 paid by the purchaser at the administrator's sale. and the same proportion of the lease money.

They make no attempt to state how much this would be under the evidence.

What was actually attempted to be sold was the fee title to the property. It was a two-thirds interest in this fee title which plaintiffs sued to recover and which the court awarded to them and which was confirmed in them. Under that judgment they are entitled to take all the rights, income, revenue, rents, etc., which go with the fee title, unless waived or relinquished by them by proper proceedings. It follows that the contention in this regard is wholly without merit.

It is next contended that by reason of the statements made by this court in affirming the original judgment, that "We are not passing upon any equitable issue which the parties may invoke in adjusting their rights." defendants are, and were in this subsequent proceeding, not estopped from asserting any equitable right which they are able to show.

Under this claim they present propositions 4, 5. and 6. Four and six may be considered together. Thereunder it is contended that the court erred in refusing judgment in their favor for the return of two-thirds of the $1,000 paid the administrator for the deed, and also the repayment of two-thirds of the $2.200 which they paid to release the lots from the mortgage which was against the lots when sold by the administrator. For this they rely in part upon section 748, O. S. 1931, which provides:

"Whenever any land, sold by an executor, administrator, * * * is afterwards recovered in the proper action by any person originally liable. or in whose hands the land would be liable to pay the demand or judgment for which. or for whose benefit the land was sold. or anyone claiming under such person, the plaintiff shall not be entitled to the possession of the land until he has refunded the purchase money with interest, deducting therefrom the value of the use, rents and profits and injury done by waste and cultivation. to be assessed under the provisions of this article."

This section clearly gives defendants the right to recover that part of the purchase price paid the administrator representing the two-thirds interest owned by the minors, viz.. two-thirds of the $1.000. or $666 66. unless they are foreclosed by their failure to set up their claim therefor in the original proceedings. This is also apparently true as to two-thirds of the amount paid to discharge the mortgage. It could hardly be said to be equitable to permit plaintiffs to recover title and possession of the premises without return of their portion of the purchase price. Neither would it seem equitable to permit plaintiffs to recover their interest in the lots free from the mortgage which they should have paid, or for which the lots were liable when inherited by them.

Article 8, ch. 3, section 742 to section 748, inclusive, O. S. 1931, is what is generally referred to as the Occupying Claimant's Act.

Section 742 clearly gives the right to recover for improvements and taxes paid. It was under that section that the court awarded defendants judgment or offset for improvements and taxes.

In Wolcott v. Smith, 33 Okla. 249, 124 P. 970, it is held:

"A judgment for the value of improvements made by an unsuccessful defendant in an action in the nature of ejectment cannot be allowed in that action, but recovery, if had at all, must be had under the provisions of sections 596-602 (sections 4794-4800) art. 25, c. 66. Wilson's Rev. & Ann. St. 1903; sections 6128-6134, Comp. Laws 1909."

And:

"Application for the benefit of this act may be made by claimant on a return of the mandate of the Supreme Court in the action of ejectment."

Section 748, O. S. 1931, is a part of the Occupying Claimant's Act, and there appears to be no good reason why the same rule should not apply to claim for the return of the purchase price thereunder as is applied to a claim for improvements and taxes.

The trial court erred in denying defendants' recovery for the two-thirds of the purchase price, including the amount paid to discharge the mortgage lien, that is, two-thirds of $3,200, or $2,132.

Here we consider the contention of plaintiffs in their cross-petition. It is that the court erred in not allowing plaintiffs judgment for two-thirds of the amount defendants received for the sale of the improvements and surface rights, that is, two-thirds of $2,960.

The uncontradicted evidence shows that for the sale of the improvements to the Champlin Refining Company, and the possession of the surface during the period of the operation of the lease, defendants were paid the sum of $2,660, and in addition

thereto received from Walker and Turner for surface right lease the sum of $300, making a total received on this account of $2,960.

The trial court found the value of the improvements sold to be $1,800, allowed defendants $500 for improvements, and allowed plaintiffs $1,200 for two-thirds of the value of the improvements, and allowed plaintiffs nothing for the amount received from the sale of the improvements and surface rights, in excess of the sum of $1,800. That is, defendants received $2,960, but were held to account for only $1,800, less the $500 allowed them for additional improvements. In this the court erred, accepting the findings of the court fixing the value of the improvements at the time they were sold at $1,800 as correct, and fixing the value of added improvements made by defendants at $500 as correct, the judgment for plaintiffs for $1,200 for their two-thirds interest in the improvements and $14 per month rental value down to October 1, 1931, would leave plaintiffs without compensation for the use of the surface rights after that date. Plaintiffs are entitled, in addition to the amount allowed them, to two-thirds the difference between the $1,800 value placed on the improvements and the $2,960 actually received by defendants for the sale thereof, or two-thirds of $1,760, thus increasing plaintiffs' judgment to $3,189.59. However, plaintiffs' contention that they are entitled to judgment for two-thirds of this $2,960 cannot be sustained, for they had already recovered two-thirds of $1,800.

Defendants further contend that they are entitled to 5/38 of the one-eighth royalty withheld by the Champlin Refining Company by reason of the fact that they owned five of 38 lots covered by the lease; that their title to the five lots was not in controversy, and that the lease should be treated in equity as what is commonly referred to as a community lease.

The general rule is, where several owners of adjoining tracts of land unite in a single lease thereof to a third party for oil and gas purposes as a single tract, and provision is made for delivery of one-eighth of the oil produced to the lessors, all the royalty must be divided among the lessors in the proportion that the area of the tract owned by each bears to the total area covered by the lease, regardless of the ownership of the particular tract upon which the well or wells may be drilled from which such oil is produced. Lynch v. Davis (W. Va.) L. R. A. 1917F, p. 566.

Strictly speaking, this is not such a lease. Here we have an oil and gas lease covering the 38 lots, executed by the Seals apparently in good faith, believing they were the owners of all the lots. It developed that they were in fact the owners of but five of the lots, and plaintiffs were the owners of a two-thirds interest in the other 33 lots, and defendants were the owners of a one-third interest therein. The oil and gas lease was given by the Seals without authority in so far as it covered the undivided two-thirds interest of plaintiffs in the 33 lots involved in this action. The wells happened to be drilled entirely upon lots in which the plaintiffs owned the two-thirds interest.

Plaintiffs earnestly contend that they are entitled to two-thirds of the total royalty, because the wells were drilled upon lots in which defendants owned but one-third interest.

In the absence of some agreement or circumstance showing an intent to pool the royalty for the common benefit of all the lessors, it will ordinarily be held that the royalty belongs to the owner in severalty from whose land it was produced. Mills & Willingham, Law of Oil and Gas, 201.

A careful examination of the record, including a stipulation for settlement of the controversy between plaintiffs herein and Harper and Turner, the original oil and gas lessees, approved by the court, whereby plaintiffs were paid the sum of $2,000 (and other sums to be paid out of production) for their ratification of the oil and gas lease, and the dismissal of the action in so far as it affected the lessees Harper and Turner, which stipulation and settlement was duly approved by the court, will not disclose any agreement whereby plaintiffs agreed to pool their royalty if successful in recovering the interest claimed by them with defendants or any other person. Nor will the record disclose any circumstance or circumstances indicating an intention to pool the royalty. On the contrary, it appears that plaintiffs were at all times asserting their intention and right to claim two-thirds of the royalty, if any, accruing from the production of oil on the lots in controversy under the lease to Harper and Turner, which was later assigned to the Champlin Refining Company. There is nothing whatever in the record or conduct of plaintiffs in the prosecution of their action to indicate that they ever intended or contemplated pooling their royalty, or dividing the royalty with any person owning other lands covered by the lease, other than to recognize that defendants were

entitled to one-third of the royalty represented by the one-third interest defendants owned in the 33 lots in controversy.

We, therefore, conclude that there was no error in denying defendants' claim of 5/38 of the royalty represented by the five separate lots they owned.

Plaintiffs earnestly contend that the court erred in disallowing judgment against defendants Seal on their claim for 6 per cent. interest on the $17,075, withheld by the Champlin Refining Company.

They expressly stipulated that the Champlin Refining Company might withhold the two-thirds royalty pending the litigation with defendants without interest. The trial court denied them interest thereon as against defendants Annie Corley Seal and C. W. Seal. In this there was no error. Payment of royalty was withheld in the first instance for their benefit. There is nothing in the record to indicate that the Seals were not in the utmost good faith in their claim of title. Certainly they should not be charged with interest prior to the date of affirmance of title in plaintiffs. They appear to be in good faith in their claim of 5/38 of the royalty. Their claim in this respect may not be said to be without apparent equity. Had the one or both of the wells been drilled upon the lots owned entirely by the defendants, plaintiffs would doubtless be here asserting their right for a portion of the royalty. We are not inclined to penalize defendants by charging them with interest in this particular case.

The question of interest as between plaintiffs and the Seals on other items is one of computation.

Plaintiffs assert here that because the Champlin Refining Company has failed to pay the money into court as directed, they are entitled to interest as against the Refining Company from the date the order was made.

This is a matter not specifically presented in the case-made.

The case will be remanded, with directions to enter judgment as between the plaintiffs herein and defendants Annie Corley Seal and C. W. Seal in accord with the views herein expressed and without prejudice to plaintiffs' right to claim for interest against the Champlin Refining Company in matters arising after the date of the judgment below.

The costs of this appeal are divided equally.

BAYLESS, V. C. J., and PHELPS, GIBSON, and HURST, JJ., concur. OSBORN, C. J., and WELCH, CORN, and DAVISON, JJ., absent.