PEERLESS OIL & GAS CO. v. TIPKEN et ux.

No. 30114. April 7, 1942.

*124 P. 2d 418.*

Charles R. Fellows and Ray S. Fellows, both of Tulsa, for plaintiff in error.

Brown & McAfee, of Oklahoma City, for defendants in error.

ARNOLD, J. This is an appeal from the district court of Lincoln county wherein the trial court sustained the demurrer of the defendants to the petition of the plaintiff.

The plaintiff alleged that the defendant Louis Tipken was the owner in fee simple of the W.½ of the N.W.¼ of sec. 15, twp. 13 N., range 6E., Lincoln county, Okla.; that on January 11, 1927, for a valuable consideration, he, together with his wife, executed and delivered to the plaintiff a mineral deed conveying, for a term of 15 years and as long thereafter as oil and gas may be produced, an undivided one-half interest in and to all the oil, gas, and other minerals in and under and that might be produced from the N.W.¼ of the N.W.¼ of sec. 15; that on May 22, 1935, Tipken and his wife, defendants, and the Peerless Oil & Gas Company, plaintiff, joined in the execution of an oil and gas mining lease covering the entire W.½ of the N.W.¼ of said section 15. Thereafter, the Yorkan Production Company secured production under said lease from a well on the S.W.¼ of the N.W.¼ of said section 15; all royalties had been paid to the defendants without division or distribution of any portion thereof to the plaintiff.

Plaintiff further alleged that said oil and gas lease above referred to contains a provision and an agreement which is as follows:

"If said lessor owns a less interest in the above-described land than the entire and undivided fee-simple estate therein, then the royalties and rentals herein provided for shall be paid the lessor only in the proportion which . . . interest bears to the whole and undivided fee."

That by virtue of such agreement in said lease, the plaintiff is entitled to one-fourth of all the royalties paid or payable for oil and gas produced and sold from the above lands, the W.½ of the N.W.¼ of said sec. 15; that although demand has been made for its proportionate share of said royalties, no part thereof has ever been paid to the plaintiff.

A copy of the lease was attached to the petition and made a part thereof.

Plaintiff concluded its petition with a prayer for an accounting and one-fourth of the value of all oil and gas royalties accrued under the lease and judgment decreeing it the owner of a one-fourth royalty interest in the oil and gas to be produced under said lease.

The above state of facts, standing alone, constitute a cause of action in favor of the plaintiff, and the court erroneously sustained the demurrer to said petition.

It is the contention of the plaintiff that said above-quoted provision of said lease means that the royalties must be paid to the lessor, whether one or more, in the proportion which their or its interest bears to the whole and undivided fee, and, therefore, the plaintiff. owning 20 acres out of the 80 acres under the lease, as a colessor, is entitled to one-fourth of the royalties produced from the lands pooled and described in said lease.

The defendants take the position that such clause means that if the lessor, Peerless Oil & Gas Company, owns less than the whole of its parcel, it should receive only its proportionate part of the royalties under that particular tract, and that the lease contract should not be enlarged to allow it to participate in the oil produced from a tract that it never acquired any interest in by deed.

Galt et al. v. Metscher, 103 Okla. 271, 229 P. 522, and the other cases to the same effect, relied on by defendants, holding that where subsequent to the execution of a lease a tract of land is subdivided and sold in separate tracts subject to the lease, the owners of such separate tracts are entitled to all the royalties accruing from their separate tracts, have no application to the question herein, that is, the division of royalties under a joint lease executed by the owners of separate contiguous parcels of land as a single tract.

In Kimbley v. Luckey, 72 Okla. 217, 179 P. 928, we said:

"Where a tract of land subject to an oil and gas lease is subdivided by the owner and lessor by selling a portion thereof, the purchaser of such portion takes the same subject to such lease; and, should the lessee therein thereafter discover and produce oil or gas from the residue of the leased premises, such purchaser is not entitled to an apportionment or share of the royalties accruing from the oil and gas produced thereon."

See, also, Pierce Oil Corp. v. Schacht, 75 Okla. 101, 181 P. 731; Galt et al. v. Metscher, supra, and the other cases to the same effect.

Conversely, in Brazell v. Brown, 169 Okla. 623, 38 P. 2d 17, we held that where two tracts of land, owned in severalty, are joined by different owners in an oil and gas lease providing for royalty to the credit of the lessors, and the lease is silent as to the division of royalty between lessors and the development is upon and the production is from one tract of the lands leased, the undeveloped royalty interest so joined is entitled to share proportionately in the production, and a petition so pleading, together with an allegation that at the time of execution of the lease contract it was agreed that such owner of the leased land should share ratably in the royalty, states a cause of action against the colessor and producer.

We are committed to the rule that where two or more owners of contiguous tracts of land join in a single lease thereof to a third party for oil and gas purposes as a single tract, and it is provided therein for delivery of one-eighth of the oil produced to the lessor, all the royalty will be divided among the lessors in the proportion that the area of the tract owned by each bears to the total area covered by the lease, in the absence of an agreement between the lessors to the contrary, regardless of the ownership of the particular tract upon which the well or wells may be drilled from which oil is produced. Higgins v. California Petroleum Co., 109 Cal. 304, 41 P. 1087; Lynch v. Davis, 79 W. Va. 437, 92 S.E. 427, L.R.A. 1917F, 566; and Seal v. Banes, 183 Okla. 203, 80 P. 2d 657.

However, the question of the division of royalties in such a case is a matter of intention of the colessors, which may be determined from the language of the lease itself, or by separate contracts or agreements between such lessors, or such conduct of the parties after the execution of the lease as would indicate a construction of the lease by them on this matter. Lusk v. Green, 114 Okla. 113, 245 P. 636; Brazell v. Brown, supra; Parker et al. v. Parker et al. (Tex. Civ. App.) 144 S.W. 2d 303; Louisiana Canal Co. v. Heyd et al., 189 La. 903, 181 So. 439, 116 A.L.R. 1260, 1267. See 3 Summers on Oil & Gas (Perm. Ed.) sec. 611.

In Lusk v. Green, supra, Selah and Susan Lusk, husband and wife, owned severally in fee simple separated quarter sections of land. They executed in the year 1912 a joint oil and gas lease covering the separate lands. Susan died and production was had on the land owned by her; Selah died and his devisees sued for a proportionate royalty share in the oil produced from the land owned by Susan. The decree of distribution in the probate of Susan's estate became final, thus distributing the interest in the land leased by Susan adverse to Selah's devisees. There was no clause in the lease to the effect that royalty should be paid to separate owners in the proportion that noncontiguous acreage owned and leased bore to the entire but separate lands, and this court, under these facts, would not indulge the presumption that a joint lease gave rise to an intention to a mutual conveyance of royalty interest.

In Higgins v. California Petroleum & Asphalt Co., supra, it is held that where owners of distinct contiguous parcels of land enter into a joint mineral lease of their properties, which by provision reserves part of production as royalty but remains silent as to division of royalty, the terms of the lease warrant a presumption of equal proportionate division of the royalty payment.

In Clark v. Elsinore Oil Co., 138 Cal. A. 6, 31 P. 2d 476, the opinion, while

considering that silence would warrant division of royalties to joint lessors of contiguous lands, deems it important that lessors there involved "chose to render it certain that there was to be an equal division of whatever royalties might be received"; such a provision, it was held, indicates an intention "to pool their holdings to the end that one or more oil producing wells might be developed on their joint properties and that no matter what location or on whose land such well or wells might be drilled, whatever profit might result therefrom should be divided equally" to the owners of equal mineral interests in the land.

It is noteworthy there, as here, that the terms of the lease agreement made royalty payable to the lessors, not to the particular lessor on whose land a producing well might be drilled.

In Lynch v. Davis, supra, there was involved, as here, rights of owners of different tracts of land who executed a joint lease thereon for the production of oil and gas. It was held that where a well was drilled upon one of the adjacent tracts, and oil produced in paying quantities, the royalty therefrom should be equally divided among the different owners. The court approved the rule in Wettengel v. Gormley (1894) 160 Pa. 559, 40 Am. S. Rep. 733, 28 Atl. 934, and Higgins v. California Petroleum & Asphalt Co., supra.

In Lynch v. Davis, supra, one issue was involved. It was whether royalty, arising from production from a well drilled upon land under one boundary jointly leased but severally owned without provision for payment of royalty to lessors separately, was to be paid to lessors proportionately. It was observed that as between lessors and lessee such a lease would be treated as a joint contract and not a contract requiring the lessee to perform obligations with each lessor, or in relation to the estate of each of the lessors. So that a well drilled on one of the tracts but not on the other, within the boundary, preserved the rights of the lessee and maintained the lease contract. South Penn Oil Co.

v. Snodgrass, 71 W. Va. 438, 43 L.R.A. (N.S.) 848, 76 S.E. 961. Therefore, when lessors of land so owned enter into a joint lease, they are presumed to know not only this limited performance required of the lessee, but also the vagrant character of oil in place. Consequently, as in the case at bar, the contention of the defendant-lessor that he is entitled to all the royalty produced from the well drilled upon his land is in recognition of the rule that such performance on the part of the lessee is sufficient to maintain the lease restricting the use of land of the colessor, thus allowing all of the oil to be extracted through the one well so located, because of the vagrant character of the petroleum, so as to devastate the oil and gas underlying the colessor's land without compensation. The West Virginia court found that a more reasonable construction was that the parties, knowing of rights of the lessee and being acquainted with the fugitive character of oil and gas in place, for convenience leased their several tracts of land as one tract, contemplating that whatever oil was produced from the whole tract of land should be paid to them jointly. In fact there, as here, it was pointed out "this is the language of the lease." It provides for payment to the lessors of the one-eighth of the oil produced from the land. There, as here, it was thought it "not likely that these parties would have made this lease in the form that they did had they believed that one of them might receive all the compensation to be derived from the production of oil." To hold that each party is entitled to receive the royalty oil or payment from a well drilled on a tract owned by that party is in effect allowing that one party to appropriate the oil and gas of the other without compensation. That court rejected, as not well founded, the theory that a division of royalties, in such a case, would in effect convey a part of the real estate of one lessor to another without all requisite formalities. The result reached, it was said, instead of having the effect urged, prevented one of the parties from securing a part of the estate of the other without procuring a conveyance or paying compensation therefor.

The logic of the decision in Lynch v. Davis, supra, is unanswerable.

Counsel make no contention that the lease in question herein is not one providing for the development of the whole tract consisting of 80 acres as a unit. We think, and therefore hold, that the oil and gas lease in question is one providing for the development of the entire tract as a whole or an entirety. It is common knowledge that oil and gas are generally produced from a common source of supply. It seems natural to us, and we assume, and therefore hold, that where the owners of separate contiguous parcels of land execute an oil and gas lease jointly providing for the development of the combined area as an entirety, it will be presumed, in the absence of a showing to the contrary, that the individual owners of the various parcels comprising said tract intended that the royalty provided therein should be apportioned to them in the proportion that their ownership bears to the entire tract.

Such presumption arose in this instance when the plaintiff included the lease in question in its petition. The plaintiff by reason of this presumption, therefore, alleged an intention on the part of the lessors to divide the royalty accruing from the entire tract according to and in proportion to their individual ownership. Except for this presumption, it would have been necessary for the plaintiff to have alleged the intention or contract of the lessors as to the division of royalties. This presumption rendered a specific allegation thereon unnecessary.

This presumption, of course, is a rebuttable one, which may be overcome by testimony of defendants disclosing a contrary intention.

In view of the foregoing discussion and holding, it is obvious that the contention of the plaintiff that the above-quoted provision of said lease constitutes an "entirety clause" and that by

reason thereof the royalty must be paid to the lessor, whether one or more, in the proportion which said interest bears to the whole undivided fee, is immaterial, for this lease is one contemplating the development of the entire tract as a whole with or without regard to said clause. However, we cannot agree with such contention. This provision was inserted in the lease for the protection of the lessee and simply means that if after the execution of the lease it is determined that the lessor or lessors have a lesser interest than that shown by the lease, it or they will take in the proportion which the interest actually owned bears to the full title. Carlock v. Krug et al., 151 Kan. 407, 99 P. 2d 858; Brazell v. Brown, supra; Parker et al. v. Parker et al., supra. Notwithstanding this construction, this provision and all other provisions of the lease may be considered along with oral or written contracts or agreements or conduct of the lessors which would indicate the intention of the lessors as to the division of royalties.

This cause is reversed, with directions to the trial court to proceed in conformity with the views herein expressed.

WELCH, C.J., and RILEY, BAYLESS, and HURST, JJ., concur. CORN, V.C.J., and OSBORN, GIBSON, and DAVISON, JJ., dissent.

---

GIBSON, J. (dissenting). Defendant Tipken owned an 80-acre tract. He conveyed to plaintiff an undivided one-half interest in the oil and gas under the north 40 acres thereof. The parties then joined in an oil and gas mining lease covering the entire tract to Yorkan Production Company. Oil was produced from the south 40, and said lessee commenced paying all the royalty to Tipken as the owner thereof. Plaintiff now seeks to establish its claim as owner in one-fourth of said royalty, alleging in substance that the effect of the lease was to communitize the entire tract for the purpose of development, giving to plaintiff that portion of the royalty from the entire 80 acres which its interest bears to the whole.

Plaintiff stood on its petition after demurrer thereto was sustained, and now appeals from the ensuing judgment for defendant.

Plaintiff says there is but one question for decision here, and that is whether an agreement between the parties to so share the royalties is expressed in the following clause contained in the lease:

"If said lessor owns a less interest in the above-described land than the entire and undivided fee-simple estate therein, then the royalties and rentals herein provided for shall be paid the said lessor only in the proportion which lessor's interests bears to the whole and undivided fee."

It is said that since plaintiff owns 20 acres of the 80, it is entitled by reason of the foregoing clause to one-fourth of the royalty from the entire tract.

It should be noted here that there is no allegation of an agreement aside from the lease or of subsequent interpretation by the conduct of the parties.

This court should take judicial knowledge of the fact that the above clause is to be found in virtually every standard form of oil and gas lease executed in this state during the past 25 years. Its principal purpose is to forestall any claim of the lessor to all rentals and royalties where his interest in the premises turns out to be less than the whole. In the absence of such a clause the lease contract on its face would purport to require full payment to the lessor regardless of the extent of his interest and the established interests of others. The primary purpose of the provision is to protect the lessee from such claims.

It can hardly be said that the ordinary man would interpret the clause in question as a conveyance of a portion of his royalty interest to a colessor or constitute an agreement between them to share in each other's lands or the production therefrom. The lease is between the lessors on the one part and the lessee on the other. See Carlock v. Krug, 151 Kan. 407, 99 P. 2d 858.

The majority opinion reaches the same conclusion, for therein it is said:

"This provision was inserted in the lease for the protection of the lessee and simply means that if after the execution of the lease it is determined that the lessor or lessors have a lesser interest than that shown by the lease that it or they will take in the proportion which the interest actually owned bears to the full title."

Thus it is seen that the only question raised by the plaintiff in error and the only proposition relied on by it for a reversal of the trial court's judgment are decided adversely to plaintiff in error. But the majority opinion, in effect, reframes the issues, evolves a new theory which was not presented to the trial court and has not been urged here by the parties, and holds:

"Where the owners of separate contiguous parcels of land execute an oil and gas lease jointly providing for the development of the combined tract as an entirety it will be presumed that the individual owners of the various parcels comprising said tract intended that the royalty provided by said lease should be apportioned to them in the proportion that their ownership bears to the entire tract, unless a contrary intention or agreement is shown."

That pronouncement in the majority opinion does not have the support of the established rule in this state. The opinion says that we are committed to the rule that the royalty will be divided as contended by plaintiff in cases of this character, in the absence of an agreement between the lessors to the contrary. Supporting the opinion are cited certain decisions from other states and Seal v. Banes, 183 Okla. 203, 80 P. 2d 657. But an examination of that case will reveal that it does not only fail to support the statement but expresses a contrary rule. The third syllabus by the court reads as follows:

"In the absence of some agreement or circumstances showing an intent to pool the royalty for the benefit of all the owners of land covered by an oil and gas lease, the royalty belongs to the owner in severalty from whose land the oil was produced."

The latter rule would place on the plaintiff in this case the burden of alleging and proving an intent on the part of the lessors to pool the royalties, or to communitize same, whereas the majority opinion would relieve plaintiff of that duty, permitting it to establish a prima facie case by merely pleading the lease. We have never before held that the mere joint execution of an oil and gas lease by the owners of separate tracts would serve as an agreement, or as evidence of an intention to communitize the royalties produced from the lands.

In Lusk v. Green, 114 Okla. 113, 245 P. 636, the court held as follows:

"Where a husband and wife, each owning a tract of land not contiguous but several miles apart, execute an oil and gas mining lease, and each tract is separately described in and covered by the same lease contract, it will not be presumed that either intended to convey to the other a royalty interest in his or her land, unless there is some affirmative evidence evincing such intention."

It is true the tracts in the Lusk Case were not contiguous, but it is to be seriously doubted whether that is of any material consequence.

In United Gas Public Service Co. v. Eaton (La. App.) 153 So. 702, it was said:

"The question has been before many of the courts of other oil-producing states of the Union. There are two distinct lines of jurisprudence on the subject. The majority rule is that such a lease is severable as between the lessors, and each lessor only shares in production from his own land. The majority rule does not support the contention that from the fact of owners of different tracts, or owners of different interests in parcels of the same tract, joining in the same lease, a presumption arises that they intended thereby to pool their various properties or interests and tacitly agree to have the land operated as an entirety and to share in production from one or all of the tracts covered by the lease, on the basis of proportionate ownership. To the contrary, if any presumption arises at all, it certainly would be in favor of the negative of such a

proposition. Intention to pool interests in this matter may only be determined from the express contract of the parties, or from facts and circumstances which certainly establish such intention on their part. It should never be inferred simply from the fact that different owners joined in the same lease contract."

And in Louisiana Canal Co. v. Heyd, 189 La. 903, 181 So. 439, 116 A. L. R. 1260, it was said:

"No presumption of law arises one way or the other as to their intention, from the mere fact that they sign a lease contract together."

The majority opinion relies principally upon Lynch v. Davis, 79 W. Va. 437, 92 S. E. 427, L. R. A. 1917F, p. 566. It may be that the conclusion was reached in that case by indulging a presumption like the one employed in the majority opinion, but the circumstances of the two leases differ to such an extent that the same or similar presumptions cannot be indulged. In the West Virginia case it appears that the contiguous tracts, which were joined in one lease, were so small that they were not capable of economical development. Here two tracts of the same size were joined in one lease, and there is no contention that each tract could not be economically developed. Furthermore, Lynch v. Davis, supra, has been limited, criticized, and in part disapproved in Pittsburgh & West Virginia Gas Co. v. Ankrom, 83 W. Va. 81, 97 S. E. 593, 5 A.L.R. 1157.

See, also, Walker v. West Virginia Gas Corp., 121 W. Va. 251, 3 S. E. 2d 55.

In Jackson v. Kent, 106 W. Va. 37, 145 S. E. 572, the court said:

"While it is true that separate and disconnected tracts of land may be merged in an instrument of lease for oil and gas development purposes, it does not follow as a matter of course that, because two or more tracts of land are included in a lease, they must necessarily be deemed to be merged. Whether they are merged or remain separate entities depends upon the intention of the parties as disclosed by the terms of the lease itself, and in determining the

meaning of the terms employed in the lease the conduct of the parties with relation thereto may be considered."

In my opinion the majority opinion misstates the present West Virginia rule, but even if it does not, I see no reason for following the rule of some foreign jurisdiction and ignoring our own as stated in Seal v. Banes, supra.

It is my belief that the majority opinion will upset long established usage in this state and understanding in the industry relative to the ownership of royalties in such cases, and will result in immeasurable harm and produce no appreciable good. Witness the action of the lessee in this case. It paid all the royalties to the defendant, who was the owner of the land from which the oil was produced. Evidently it did not consider the lease as a transfer of any interest in the royalties of the lessors. And such, in my opinion, would be the interpretation placed upon the lease by the ordinary lessor and lessee.

I therefore respectfully dissent.

I am authorized to say that Vice Chief Justice CORN and OSBORN and DAVISON, JJ., concur in these views.